**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

JESSICA BLANTON, on behalf of herself
and all others similarly situated,

      Plaintiff,

v.                                  No. 24-cv-484-SMD-JMR

UNITED HEALTHCARE SERVICES, INC.,

      Defendant.

## <u>MEMORANDUM OPINION AND ORDER</u>

On May 17, 2024, Plaintiff Jessica Blanton ("Plaintiff" or "Blanton") filed a class action complaint, Doc. 1 ("Pl.'s Compl.") against Defendant United Healthcare Services, Inc. ("Defendant" or "UHS"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), and the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, et seq. ("NMMWA").

This matter comes before the Court on Defendant's motion to dismiss Plaintiff's complaint, and in the alternative, to strike Plaintiff's NMMWA class action claims, Doc. 19 ("Def.'s Mot. to Dismiss"); and relatedly, Plaintiff's motion for equitable tolling of Plaintiff's FLSA claims, Doc. 23 ("Pl.'s Mot. for Equitable Tolling"), and Plaintiff's motion to strike Defendant's reply (or the portions thereof) in support of Defendant's motions relating to Plaintiff's NMMWA claims, Doc. 25 ("Pl.'s Mot. to Strike"). The Court held a hearing on all three motions on August 14, 2025. Doc. 39. Defendant then filed a motion for a hearing or, in the alternative, supplemental briefing, on the question of whether Plaintiff's claims are tolled. Doc. 42 at 1 (citing D.N.M.LR-Civ 7.1). Plaintiff opposes that motion. Doc. 43.

For the reasons set forth below, the Court DENIES Defendant's motion to dismiss and in

the alternative to strike Plaintiff's FLSA claims, and GRANTS Plaintiff's motion for equitable tolling of those claims. The Court DENIES Defendant's motion to dismiss and in the alternative to strike Plaintiff's NMMWA individual and class action claims, and DENIES Plaintiff's motion to strike Defendant's reply to Defendant's motion to dismiss.

The Court also DENIES Defendant's request for an additional hearing or supplemental briefing on the issue of equitable tolling. Defendant's proposed supplemental brief, *see* Doc. 41 Ex. A, identifies decisions that were issued "after the parties' briefs were submitted in this case," *id.* at 5. While it is certainly true that these cases had not yet been published at the time Defendant responded to Plaintiff's motion for equitable tolling, they were all available well-before the August 2025 hearing.[1] The appropriate time to discuss these cases would have been at the hearing already afforded to the Parties. Defendant offers no explanation as to why it neglected to take that opportunity. Regardless, the Court has reviewed the proposed supplemental briefing and finds that the mentioned cases do not alter its decision.[2]

---

[1] Briefing was completed as to all motions on October 31, 2024. *See* Doc. 32; Doc. 33; Doc. 34. Defendant cites the following cases to support its opposition to equitable tolling, none of which were entered after the August 14, 2025 hearing: *MSP Recovery Claims, Series LLC v. Fresenius Med. Care Holdings, Inc.*, 131 F.4th 51 (1st Cir. 2025) (published Mar. 17, 2025); *Kwoka v. Enter. Rent-A-Car Co., LLC*, 141 F.4th 10, 23 (1st Cir. 2025) (published June 18, 2025); *Son v. Hand Hosp.*, 768 F. Supp. 3d 526, 545–46 (S.D.N.Y. 2025) (published Feb. 18, 2025); *Munoz v. Grp. U.S. Mgmt. LLC*, 348 F.R.D. 192, 209 (S.D.N.Y 2025) (published Jan. 6, 2025); *Ding v. Mask Pot Inc.*, 347 F.R.D. 417, 430 (E.D.N.Y. 2024) (published Oct. 8, 2024); *Lambro v. United States*, 175 Fed. Cl. 536, 549 (2025) (published Apr. 1, 2025); *Febles v. Am Health Reform Sols., LLC*, No. 2:24-CV-47-JLB-KCD, 2024 WL 4956765, at *3 (M.D. Fla. Nov. 15, 2024); *Deakin v. Magellan Health, Inc.*, No. 1:17-CV-00773-MLG-KK, 2025 WL 295668, at *3 (D.N.M. Jan. 23, 2025).

[2] Defendant most extensively discusses *Fresenius* in its proposed brief and interprets it to mean that tolling ends when a putative class member "should have proceeded if [they] had all the pertinent information." Doc. 42, Ex. A at 4. The Court finds Defendant's statement to be imprecise. *Fresenius* asked when tolling would terminate, assuming that "would-be class members are aware of what is transpiring in the putative class proceeding." 131 F.4th at 58. Under that standard, the *Fresenius* court expected plaintiffs to act "when counsel disavowed any intent to seek class certification." *Id.* at 59. Expecting putative class members to pay attention to a proceeding is materially different from expecting them to be omniscient. As is discussed at length in this Order, Plaintiff lacked access to the kind of public notice available in *Fresenius* and the Court will not fault her for failing to respond to a privately reached, clumsily administered settlement agreement.

**RELEVANT PROCEDURAL HISTORY AND BACKGROUND**

The procedural history of this matter is intertwined with that of *Fedor v. United HealthCare, Inc.*, *et al.*, No. 17-cv-13-MV-SCY (D.N.M) ("*Fedor*"). The Fedor litigation was complicated, drawn-out, and prolonged by a series of events, most of which are not relevant to the present litigation beyond their dilatory effect. The Court assumes the Parties' familiarity with the *Fedor* litigation and, accordingly, only recounts those parts of the procedural history that are relevant to the present motions.

I.    *Fedor* **Litigation**

A.    Resolution of Motion to Dismiss, 2017-2022

On January 7, 2017, Dana Fedor filed a collective and class action complaint against United HealthCare, Inc., alleging FLSA and NMMWA violations, on behalf of herself and all others similarly situated. Compl., *Fedor.*, No. 17-cv-13-MV-SCY (D.N.M. Jan 7, 2017), Dkt. No. 1. Fedor alleged, on behalf of herself and all other "Care Coordinators," that United HealthCare, Inc. and United Health Services (collectively "*Fedor* defendants") had violated the FLSA and NMMWA primarily by not paying "Care Coordinators" overtime for working in excess of 40 hours per week. Am. Compl., *Fedor*, Dkt. No. 3 ¶ 6. The *Fedor* defendants moved to dismiss the amended complaint, primarily arguing that plaintiffs should be compelled to arbitrate their claims. Defs.' Mot. to Dismiss, *Fedor*, Dkt. No. 16. Nearly 22 months after filing, the district court granted the *Fedor* defendants' motion to dismiss. *Fedor v. United Healthcare, Inc.*, No. 17-cv-13, 2019 WL 1242236 (D.N.M. Mar. 18, 2019). Over a year later, the Tenth Circuit vacated that decision and remanded to the district court. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100 (10th Cir. 2020).

3

The *Fedor* plaintiffs filed a motion for "step-one" notice under the FLSA. Corrected Mot. for Step-One Notice, *Fedor*, Dkt. No. 62 ("Mot. for Step-One Notice"). Plaintiffs' motion for "step-one" notice further defined the settlement class of "care coordinators" to include all salaried employees who performed care coordination functions under various job titles. *Id.* at 4–5. The parties filed a stipulation to stay the proceedings pending resolution of defendants' remanded motion to dismiss to "avoid duplicative litigation and to preserve judicial resources." Stipulation to Stay Proceedings, *Fedor*, Dkt. No. 68 ("Stipulation to Stay Proceedings"). Specifically, the parties stipulated to toll the FLSA statute of limitations for the putative collective—without waiving defendants' right to challenge the motion for equitable tolling—between the date the stipulation was approved by the court and the date of the court's order regarding defendants' motion to dismiss. *Id.* ¶¶ 1–2. Defendants explicitly reserved the right to challenge both plaintiffs' motion for "step-one" notice and motion for equitable tolling. *Id.* ¶ 3.

On May 7, 2021, the district court denied the *Fedor* defendants' motion to dismiss in nearly all respects, except as to one opt-in plaintiff. *Fedor v. United Healthcare, Inc.*, No. 17-cv-13, 2021 WL 1840449 (D.N.M. May 7, 2021). The *Fedor* defendants appealed. *Fedor*, Dkt. No. 74. On April 11, 2022, the Tenth Circuit affirmed the district court's order and remanded. *Fedor v. United Healthcare, Inc.*, No. 21-2051, 2022 WL 1073444 (10th Cir. Apr. 11, 2022). The defendants then filed a notice stating that the parties had agreed that defendants' responses to plaintiffs' motions for "step-one" notice and equitable tolling would be filed 14 days after the Circuit issued its mandate returning the case to district court. *Fedor*, Dkt. No. 79.

B.  Settlement and Sanctions, 2022-2025

The following procedural history became the subject of plaintiffs' successful motion for sanctions. *See Fedor v. United Healthcare, Inc.*, No. 17-cv-13, 2025 WL 1124529, at *5 (D.N.M.

Apr. 15, 2025).

On July 22, 2022, defendants provided payroll data to plaintiffs for the settlement class. *Fedor*, 2025 WL 1124529, at *3.  The *Fedor* court later found that the parties understood the settlement class to (a) reflect "care coordinators" as defined in the amended complaint and clarified by plaintiffs' one-step notice, but (b) carve out those with the job title of "Case Manager RN." *Id.* at *3–4.  Plaintiffs used defendants' payroll data to create a damage model. *Id.* at *4.  Relying on that damage model, the parties executed a settlement agreement, set up a mechanism for defendants to fund a settlement fund, and the settlement administrator mailed out class notice. *Id.* at *4, *5. The parties did not provide the settlement agreement to the district court and its terms were not publicly accessible.  The court ordered the parties to file a notice when they reached final settlement informing the court whether the final settlement is the same as the tentative settlement discussed in their motion. *Id.*

Then, in fall 2023, plaintiffs' counsel and the settlement administrator began receiving calls from individuals who believed they should have been included in the settlement, but did not receive a notice. *Id.* at *4.  Defendants' counsel told plaintiffs' counsel that some of these individuals excluded from defendants' list were hired after January 1, 2016, and had signed an arbitration agreement. *Id.*  Defendants also elected to exclude individuals employed as registered nurses ("RNs") or licensed practical nurses ("LPNs"). *Id.*  Plaintiffs' counsel substantively responded to defendants' counsel that individuals hired after January 1, 2016, were part of the class and that the settlement class only excluded those who worked specifically in the "Case Manager RN position." There was no additional exception based on nursing licensure. *Id.*

On February 28, 2024, plaintiffs moved for sanctions.  *Fedor*, Dkt. No. 104. Approximately one week later, defendants moved to enforce the parties' settlement agreement.

*Fedor*, Dkt. No. 105. The district court granted the plaintiffs' motion and denied the defendants' motion. *Fedor*, 2025 WL 1124529, at *5. The court found that "Defendants' failure to identify class members, disclose information about class members, and respond to Plaintiffs' concerns about those failures" was sanctionable. *Id.* Specifically, the court found that "Defendants' failure to provide payroll data for *all* members of the proposed settlement class, and their failure to inform Plaintiffs of the exclusion they applied," violated the court's order staying the case, and constituted bad faith. *Id.* at *6. In so doing, the court noted that the parties had represented in their motion to stay the case that defendants would provide payroll data for members of the proposed settlement class; that although that motion did not define "settlement class," the amended Complaint had defined the settlement class as "Defendants' current and former 'Care Coordinators'"; that plaintiffs' motion for "step-one" notice further defined that settlement class to include all salaried employees who performed care coordination functions under various job titles; and that Defendants had not provided an alternative definition for the settlement class. *Id.* The court found that the "only limitation on the settlement class to which the parties agreed was 'to limit the class by excluding a single job title—the 'Case Manager RN' position." *Id.* Based on defendants' sanctionable behavior, the *Fedor* Court refrained from enforcing the settlement agreement, which would result in closure of the case and denied defendants' motion without prejudice. *Id.* at *5, *7–10. The court ordered defendants to provide plaintiffs with the missing data and directed Plaintiffs to file a motion for attorney's fees and expenses. *Id.* at *7.

The case remains open, along with the *Fedor* plaintiffs' motions for "step-one" notice under the FLSA, Mot. for Step-One Notice, and for equitable tolling of the FLSA three-year statute of limitations. *Fedor*, Dkt. No. 63.

## II.    *Blanton* Litigation

Meanwhile, on May 17, 2024, Plaintiff Jessica Blanton filed a complaint against UHS, alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), and the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, et seq. ("NMMWA").   Pl.'s Compl.[3]  Blanton alleges that she worked for UHS as a "Case Manager RN" from approximately November 2013 to September 2018.  *Id.* ¶¶ 13–14.  Blanton alleges that UHS had agreed to perform care coordination services to individuals enrolled in Medicaid in New Mexico, *id.* ¶¶ 8–9; that individuals performing those services were referred to as "care coordinators"; that UHS employed care coordinators under different job titles; and that care coordinators that were registered nurses were employed under the job title "Case Manager RN."  *Id.* ¶¶ 10–12.

Blanton alleges that UHS violated the FLSA and NMMWA by not properly paying "Case Manager RNs" overtime.  *Id.* ¶¶ 2–4, 15–21, 22–24.  According to Blanton, UHS paid Case Manager RNs such as her a salary but improperly classified them as exempt from overtime laws.  *Id.* ¶¶ 15–17, 23–27, 44–45.  Blanton alleges that UHS reclassified all Case Manager RNs (including her) and other care coordinators as non-exempt from overtime laws on or about January 1, 2018.  *Id.* ¶¶ 30–32.

Blanton brings individual FLSA claims against UHS.  *Id.* ¶¶ 1, 24–27, 33, 35, 37–38, 40, 77-81.  Blanton alleges that UHS' violations were willful because UHS classified "other employees who performed many of the same primary job duties as Case Manager RNs as non-exempt" from FLSA overtime requirements.  *Id.* ¶ 81.

Blanton alleges both individual and class action NMMWA claims.  *Id.* ¶¶ 1, 24–27, 34, 36, 40–41, 61–75, 83–93.  Blanton brings the NMMWA class claims under Rule 23 of the Federal

---

[3] Plaintiff Blanton's counsel was one of various counsels representing the *Fedor* Plaintiffs.  UHS' counsel in this lawsuit is different than that in the *Fedor* lawsuits.

Rules of Civil Procedure. *Id.* ¶¶ 1, 41, 58, 61–62.  Blanton defines the asserted class as "[a]ll individuals employed by Defendant as Case Manager RNs in New Mexico who were paid on a salary basis and classified as exempt from overtime from June 19, 2009 to the present." *Id.* ¶ 62. Blanton additionally asserts that UHS' violations occurred as part of a "continuing course of conduct" under N.M. Stat. Ann. § 50-4-32, and thus she and putative class members may recover for all violations regardless of the date on which they occurred. *Id.* ¶¶ 42–46, 92–93.

## DISCUSSION

Because the legal standards and analysis differ for Plaintiff's federal FLSA claims and state NMMWA claims, this Court addresses these claims separately.

## I.    FLSA Claims

UHS' motion to dismiss Plaintiff's FLSA claims and Plaintiff's motion to equitably toll those claims are properly considered together.  "A statute of limitations defense 'may be appropriately resolved on a Rule 12(b) motion when the dates given in the complaint make clear that the right sued upon has been extinguished." *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016); *see also Born v. Progrexion Teleservs., Inc.*, No. 20-CV-00107, 2020 WL 4674236, at *4 (D. Utah Aug. 11, 2020) (explaining that courts in this Circuit "regularly consider equitable tolling arguments when a defendant challenges the timeliness of an FLSA claim").  This Court denies UHS' motion to dismiss[4] and grants Plaintiff's motion for equitable tolling for the reasons set forth below.[5]

---

[4] Defendant also moves for dismissal for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  Def.'s Mot. to Dismiss at 5–6.  Defendant's motion on this ground is denied as to Plaintiff's FLSA claims.  *See Born*, 2020 WL 4674236, at *3–4 (FLSA motion to dismiss, though styled as a Rule 12(b)(1) motion asserting lack of subject matter jurisdiction, is more properly considered a Rule 12(b)(6) motion for failure to state a claim upon which relief can be granted (citing *United States v. Kwai Fun Wong*, 575 U.S. 402, 412 (2015) (holding that the Federal Tort Claims Act's limitations period is not a jurisdictional requirement and is subject to equitable tolling))).

[5] UHS argues that Plaintiff conceded the motion to dismiss by filing a separate, later motion for equitable tolling. Doc. 24 at 1 nn.1, 2–3.  This Court declines to find concession because Plaintiff referenced the forthcoming motion for equitable tolling in her response to the motion to dismiss.  Pl.'s Resp. to Def.'s Mot. to Dismiss at 18 n.21.

A.    Legal Standards

i.    Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true." *Mobley v. McCormick*, 40 F.3d 337, 340 (10th Cir. 1994). The complaint's sufficiency is a question of law, and, when considering a Rule 12(b)(6) motion, a court must accept as true all of the complaint's well-pled factual allegations, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* "Factual allegations must be enough to raise a right to relief above the speculative level … on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, at 235–36 (3d ed. 2004)).

ii.    Equitable Tolling

Equitable tolling permits courts to extend statutes of limitations on a case-by-case basis to prevent inequity. *See Abrams v. City of Albuquerque*, No. 10-cv-0872-MV-RHS, 2014 WL 11497810, at *3 (D.N.M. June 26, 2014). Federal courts "have typically extended equitable relief

9

only sparingly." *Irwin v. Dep't of Veterans Affs.*, 498 U.S. 89, 96 (1990).

The Tenth Circuit has held that equitable tolling of time limitations is appropriate where the circumstances of the case "rise to the level of active deception,"[6] "where a plaintiff has been 'lulled into inaction by her past employer, state or federal agencies, or the courts,'"[7] or where "a plaintiff … 'has in some extraordinary way been prevented from asserting his or her rights.'"[8] Courts in this District have applied equitable tolling to FLSA deadlines. *See*, *e.g.*, *Abrams*, 2014 WL 11497810, at *3 ("The majority of courts have held that equitable tolling is an available remedy under the FLSA, provided that the circumstances warrant application of the doctrine."). "[T]he decision to invoke equitable tolling in a particular case lies exclusively within the sound discretion of the trial court." *Felps v. Mewbourne Oil Co.*, 460 F. Supp. 3d 1232, 1239 (D.N.M. 2020).

### B.  Applicable Statutes of Limitations

Plaintiff does not substantively dispute that, absent equitable tolling, Defendant's motion to dismiss would be granted because the FLSA statute of limitations has run.  Def.'s Mot. to Dismiss at 7–9; Doc. 22 at 1, 18; Doc. 24 at 1, 2–3; *see Sierra Club*, 816 F.3d at 671.  The FLSA's maximum limitations period is three years.  *See* 29 U.S.C. § 255(a) (stating that FLSA claim must be brought within two years of accrual unless violation is willful, in which case claim must be brought within three years).  Additionally, although the Tenth Circuit has not ruled specifically, it is "well established" that "the statute of limitations for violations of the … overtime provisions of the [FLSA] runs anew with each paycheck." *Figueroa v. D.C. Metro. Police Dep't*, 633 F.3d 1129, 1134 (D.C. Cir. 2011) (quoting *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618,

---

[6] *Cottrell v. Newspaper Agency Corp.*, 590 F.2d 836, 838–39 (10th Cir. 1979); *accord Gray v. Phillips Petroleum Co.*, 858 F.2d 610, 615 (10th Cir. 1988).
[7] *Martinez v. Orr*, 738 F.2d 1107, 1110 (10th Cir. 1984); *accord Gray*, 858 F.2d at 615.
[8] *Martinez*, 738 F.3d at 1110; *Gray*, 858 F.2d at 615.

641 (2007) and collecting caselaw). "In order to be joined as a plaintiff in an FLSA case, an individual must file his or her consent to opt-in to a class action within the applicable statute of limitations." *Abrams*, 2014 WL 11497810, at *2. Blanton did not opt-in to the *Fedor* lawsuit filed January 7, 2017, and filed this lawsuit on May 17, 2024, over seven years later. On its face, Blanton's FLSA claims would ordinarily be time-barred.

### C. The Court Applies Equitable Tolling to Plaintiff Blanton's FLSA Claims

However, this is not an ordinary case. Here, Blanton was a putative opt-in plaintiff in a prior suit who did not receive FLSA "step-one" notice while UHS' motion to dismiss took five years to resolve (not owing to those plaintiffs' delay), and settlement took another two years (owing in part to UHS' bad faith sanctionable delay). Meanwhile, after those plaintiffs successfully appealed UHS' motion to dismiss, UHS agreed to toll the FLSA statute of limitations for those putative opt-in plaintiffs in return for staying those plaintiffs' motions to certify "step-one" notice and to equitably toll claims back to May 2017. The district court ordered that tolling agreement, which has not ended. Rather than closing the case after the parties settled, that court imposed sanctions on UHS for bad faith and dilatory actions regarding the scope of the settled class that did receive notice. This Court orders equitable tolling of Blanton's FLSA claim sounding in all three of this Circuit's factors—"active deception," a plaintiff "lulled into inaction," and extraordinary circumstances—as set forth below.

At the outset, this Court finds that Blanton was a putative opt-in plaintiff (a.k.a. putative collective member) in *Fedor*. The Parties vigorously dispute this. *See* Def.'s Mot. to Dismiss at 2, 8, 9 n.6; Doc. 22 at 13-15; Doc. 24 at 2 (motion to dismiss briefing); Doc. 23 at 2 n.2, 3 n.5; Doc. 26 at 11-12; Doc. 28 at 9 (equitable tolling briefing); Doc. 25 at 4 & n.2; Doc. 27 at 17; Doc. 31 at 6–7 (motion to strike reply briefing). The *Fedor* court's sanctions findings support that those

parties understood "care coordinators" who were registered nurses (like Blanton) to be putative *Fedor* class members regardless of their specific job title, based on, inter alia, the *Fedor* plaintiffs' motion for step-one notice.[9]  *See Fedor*, 2025 WL 1124529, at *4, *6.  Indeed, UHS concedes that Fedor's step-one motion defined the proposed collective of "care coordination employees" to include the title "RN Case Manager."  Def.'s Mot. to Dismiss at 4.  The Parties later carved out of the settlement class "care coordinators" with the "Case Manager RN" job title, like Blanton.  *Id.* at *4, *6.  This Court further finds that this carve-out indicates that the Parties understood "Case Manager RNs" (like Blanton) to be part of the *Fedor* putative class from the outset.  *See* Doc. 22 at 15 n.17.

This Court finds undue delay, not attributable to the *Fedor* Plaintiffs, in deciding UHS' motion to dismiss those Plaintiffs' lawsuit.  *Abrams* is persuasive.  *See Abrams*, 2014 WL 11497810, at *6–7, *11 & n.6 ("undue" delay in deciding a motion to dismiss can constitute an "extraordinary" circumstance warranting equitable tolling of the FLSA statute of limitations under Tenth Circuit law) (internal citations omitted)).  Here, UHS' motion to dismiss was pending nearly 22 months before the District Court—over a year while fully briefed, and longer after UHS requested further briefing on Supreme Court precedent—and ultimately, was remanded to the District Court nearly three years and five months after UHS filed.  *See Coppernoll v. Hamcor, Inc.*, No. 16-cv-05936, 2017 WL 1508853, at *2 (N.D. Cal. Apr. 27, 2017) (granting FLSA plaintiffs equitable tolling while case was stayed pending the same U.S. Supreme Court decision at issue in

---

[9] UHS argues that Plaintiff's arguments that UHS had sufficient notice of whether Blanton was part of the *Fedor* putative class are improperly based on "extrinsic evidence," and should not be considered upon a motion to dismiss.  *See* Pl.'s Resp. to Def.'s Mot. to Dismiss at 13–15; Doc. 24 at 7 n.4; *see also* Pl.'s Mot. to Strike at 4 & n.2; Def.'s Resp. to Pl.'s Mot. to Strike at 17; Doc. 31 at 6–7.  Plaintiff points out that its arguments were based on filings in *Fedor*.  Pl.'s Mot. to Strike at 4 & n.2.  The *Fedor* Court subsequently made relevant findings as part of its sanctions order.  UHS then argued that Judge Vazquez's sanctions order is "a decision of another District Judge in a separate matter, which is not binding on this Court."  Doc. 37 at 1.

This Court does not find it improper to consider these arguments and that Court's factual findings in its sanctions order on this motion for equitable tolling, at the very least.

*Fedor*); *cf. Abrams*, 2014 WL 11497810, at *11 (finding that an eight-month delay in deciding a motion to dismiss contributed to an overall undue delay of twenty months); *Madsen v. Sidwell Air Freight, DHL Express (USA) Inc.*, No. 23-CV-0008, 2024 WL 1157394, at *2–3 (D. Utah Mar. 18, 2024) (collecting FLSA cases granting equitable tolling based on delays shorter than 22 months).

UHS argues that Plaintiff did not diligently pursue her rights because she should have moved for conditional certification and "step-one" notice pending UHS' motion to dismiss. Doc. 26 at 8–9; *cf.* Doc. 28 at 4–5.[10] This Court instead agrees with *Abrams*, which did not expect FLSA plaintiffs to expend time and valuable resources working to notify putative class members while a defendant moved to dismiss the entire lawsuit. *Abrams*, 2014 WL 11497810, at *11 & n.6. Indeed, the *Fedor* court initially dismissed that entire lawsuit. *Fedor*, 2019 WL 1242236. The *Fedor* court's stay of the case pending UHS' motion to dismiss further supports that plaintiffs did not sleep on their rights. *See Coppernol*, 2017 WL 1508853, at *2; *cf. Abrams*, 2014 WL 11497810, at *11 (finding undue delay even without a stay) (citing *In re Bank of Am. Wage & Hour Employment Litig.*, No. 10-MD-2138-JWL, 2010 WL 4180530, at *6 (D. Kan. Oct. 20, 2010) (similar)).

The "undue" delay not attributable to the *Fedor* plaintiffs was further prolonged by a second appeal, this time by Defendants after the district court denied their motion to dismiss, resulting in an additional over 18 months until the Circuit returned the case to the district court. *See*, *e.g.*, *Kim v. Dongbu Tour & Travel, Inc.*, Civ. No. 2:12-cv-1136 (WHW), 2013 WL 5674395,

---

[10] UHS also now argues against equitable tolling here because the *Fedor* Plaintiffs filed late to certify step-one notice, i.e. at the outset of the second resolution of the motion to dismiss. *See* Doc. 26 at 8–9; Doc. 28 at 4–6. The equities do not support that argument. Notably, UHS argued then that the *Fedor* Plaintiffs' motions for "step-one" notice and equitable tolling were premature—indeed, "wholly improper" pending the second resolution of the motion to dismiss. *Fedor*, Dkt. No. 66 at 2–3.

at \*1 (D.N.J. Oct. 16, 2013) (granting equitable tolling where defendant unsuccessfully appealed order denying motion to compel arbitration).

During that second delay, the *Fedor* court's tolling order for putative opt-in plaintiffs like Blanton, after the *Fedor* plaintiffs moved to certify "step-one" notice, further supports equitable tolling in this litigation.[11]  *Cf. LaFleur v. Dollar Tree Stores, Inc.*, No. 12-CV-00363, 2012 WL 4739534, \*6 nn.2 & 7 (E.D. Va. Oct. 02, 2012) (distinguishing cases tolling the statute of limitations for, e.g., a defendant's request to stay a case from a court's decision-making during the certification process).  This Court need not determine whether "step-one" notice delays always or never warrant equitable tolling to find that equitable tolling is warranted here.  The *Fedor* court's tolling order for putative opt-in plaintiffs, on UHS' consent to stay "step-one" certification, further delayed notice to the putative class while potentially lulling it "into inaction."  *See In re Bank of Am.*, 2010 WL 4180530, at \*6 (in multi-district FLSA litigation, where an order tolling notice to putative class members was already in effect, putative class members were "entirely reasonable to believe that they were not in danger of losing their claims to the statute of limitations by waiting to file an opt-in form until they received formal notice of the lawsuit").  UHS cannot now argue prejudice where it was aware of the putative class members' claims and moreover, requested a court order tolling them.  *Id.* at \*6–7; *see also Abrams*, 2014 WL 11497810, at \*11 (citing *Gray*, 858 F.2d at 616 (tolling statute of limitations where defendant was "fully apprised" of the plaintiffs' claims and did not show "significant prejudice" from allowing plaintiffs to proceed)).

---

[11] Generally, the parties disagree regarding sufficient notice to Blanton.  Blanton argues that delays in "step-one" notice of the litigation to the putative class warrant equitable tolling, Pl.'s Mot. for Equitable Tolling at 1–2, 7–10; Doc. 28 at 1–4, while UHS argues they do not, and rather, its reclassification of Blanton's position provided sufficient notice to opt into *Fedor*.  Doc. 26 at 5–6.  Neither Blanton nor UHS proffer caselaw exactly on point regarding a situation like this where equitable tolling rests primarily on the procedural history of a different but related case.  *See id.* at 9–10; Doc. 28 at 6–7.

When the parties settled, the Court further stayed the case, and on UHS' consent, further tolled the FLSA statute of limitations while staying Plaintiffs' motion to certify "step-one" notice. *Fedor*, Dkt. Nos. 85, 86.  UHS then violated that order by engaging in bad faith sanctionable behavior delaying the settlement, as described above.  *Fedor*, 2025 WL 1124529, at \*6.  That sanctionable behavior supports equitable tolling as further "undue delay."  It also supports equitable tolling as "active deception" or "lulling [plaintiff] into inaction."  *See*, *e.g.*, *Montooya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002) (citing *Martinez*, 738 F.2d at 1110 (recognizing equitable tolling where a plaintiff is "actively misled")).  Indeed, the *Fedor* district court found valid the plaintiffs' argument that UHS attempted to "run out the clock" by providing incomplete information, waiting for the deadline to file closing documents to pass, and then asking that Court to enforce the Settlement Agreement.  *Fedor*, 2025 WL 1124529, at \*6; *see also Montoya*, 296 F.3d at 957–58, (citing *Irwin*, 498 U.S. at 96 (allowing equitable tolling "where the complainant has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass.")).

UHS validly argues that if tolling extends over seven years, witnesses may have left the company, memories may have faded, and documents may be lost.  Doc. 26 at 11–12.[12]  But courts considering prejudice to FLSA defendants focus on whether defendants are put on notice of claims at the outset of litigation so that they can avoid evidence growing stale.  Pl.'s Mot. for Equitable Tolling at 1–2, 9, 10; Doc. 28 at 9–10; *see Abrams*, 2014 WL 11497810, at \*11 ("Statutes of limitations are designed to ensure fairness to defendants and to notify them of claims that they

---

[12] Blanton brings individual, not collective, FLSA claims.  Compl. ¶¶ 1, 24–27, 33, 35, 37–38, 40, 77–81.  As such, it is unnecessary to rule on UHS' arguments against "blanket" tolling of all FLSA putative class members.  Doc. 26 at 6.  Blanton, for her part, argues for equitable tolling for "the other *Fedor* putative collective members' claims against Defendant under the Fair Labor Standards Act."  Pl.'s Mot. for Equitable Tolling at 11.  Because Blanton brings only individual FLSA claims, this Court considers tolling of the *Fedor* putative class members only as applied to Blanton.

must defend before the claims grow stale." (quoting *Owens v. Bethlehem Mines Corp.*, 630 F. Supp. 309, 313 (S.D. W.Va. 1986)). Here, UHS consented to tolling with knowledge of the putative class and then contributed to claims growing stale by its dilatory behavior. It is thus difficult to find Defendant's concern over lost evidence credible, given that it has been embroiled in FLSA litigation for almost a decade and has repeatedly prolonged that period.

This Court grants Blanton's request to apply equitable tolling from May 26, 2017, when UHS moved to dismiss in the *Fedor* litigation, through February 28, 2024, the date the *Fedor* court was first informed that a settlement had been finalized and effectuated.[13] Pl.'s Mot. for Equitable Tolling at 2, 11; Doc. 26 at 10–11; Doc. 28 at 8–10.

Regarding the start of tolling, this Court begins at UHS' motion to dismiss in the *Fedor* litigation—May 26, 2017. *See* Mot. to Dismiss, *Fedor*, Dkt. No. 16. While more commonly, courts toll back to filing for step-one certification, Pl.'s Mot. for Equitable Tolling at 2, 11; Doc. 26 at 10–11; Doc. 28 at 8–10, in this case, UHS' motion engendered an unusually lengthy initial delay that would have negated the putative class members' claims while the case was stayed (on UHS' request), dismissed, appealed and remanded. *See Abrams*, 2014 WL 11497810, at *11; *see also Collins v. Dkl Ventures, LLC*, No. 16-CV-00070, 2016 WL 852880, at *3 (D. Colo. Mar. 4, 2016) (tolling statute of limitations from the date defendant filed its motion to dismiss while the Court stayed the litigation at defendant's request). The *Fedor* plaintiffs diligently pursued their rights to toll back to the date of UHS' motion to dismiss. Plaintiffs' motion for equitable tolling upon the Circuit's first remand to the District Court requested to toll back to that date, and subsequently,

---

[13] Blanton's Complaint asserts that "[a]s a putative class member in the *Fedor* litigation, Plaintiff's claims were tolled—at latest—on March 28, 2017" (the date of the filing of the *Fedor* amended complaint). Pl.'s Compl. ¶¶ 47–52 & n.1. In the instant briefing, however, Blanton requests tolling back to the motion to dismiss. Pl.'s Mot. for Equitable Tolling at 2, 11; Doc. 28 at 8–10.

that Court tolled the statute of limitations pending that motion for equitable tolling.  *Fedor*, Dkt. No. 63 at 1.

Regarding the end of tolling, Plaintiff requests tolling through February 28, 2024, when the *Fedor* plaintiffs filed for sanctions, because that was "the date the *Fedor* court was first informed that a settlement had been finalized and effectuated."  Pl.'s Mot. for Equitable Tolling at 11.  Pertinent here, that was the first time a public court docket filing stated that Case Manager RNs had been carved out of the FLSA collective, *Fedor*, Dkt. No. 104 at 2–4, 7, for which the *Fedor* Court had tolled the statute of limitations.  Stipulation to Stay Proceedings ¶ 2.

A different date on which to end tolling could be when the parties agreed to carve out the Case Manager RNs from the FLSA collective.[14]  The *Fedor* Court found that the settlement agreement was memorialized on August 11, 2023.  *Fedor*, 2025 WL 1124529, at *4.  Prior to that, UHS avers that the *Fedor* parties agreed to exclude Case Manager RNs from settlement negotiations sometime prior to July 22, 2022, when the *Fedor* Defendants provided payroll data to the plaintiffs.  Def.'s Mot. to Dismiss at 4 n.3.

However, there is no indication the carve-out of Case Manager RNs was made public before the *Fedor* plaintiffs' sanctions motion of February 28, 2024.  When the *Fedor* defendants filed a response to plaintiff's motion for extension of time to file closing documents, they illuminated that the privately executed settlement agreement applied only to those in the "Care Coordinator" role. *Fedor*, 17-cv-13-MV-SCY, Dkt. No. 102 (Dec. 5, 2023).  However, it has been established that the step-one motion defined the proposed collective of "care coordination employees" to include the title "RN Case Manager."   Def.'s Mot. to Dismiss at 4.  Privately alterations to the definition of "Care Coordinator" did not grant Blanton any notice of her exclusion

---

[14] UHS does not specifically challenge an end date of February 28, 2024, aside from challenging tolling generally. Doc. 26 at 10–11.

from the settlement.  Rather, it was not until the *Fedor* plaintiffs filed their motion for sanctions that the Case Manager RN exclusion was publicly announced.

In tolling analysis, courts have focused on whether, in the absence of FLSA public notice, the putative collective is reasonable in assuming no action to be required to preserve their claims. *See In re Bank of Am.*, 2010 WL 4180530, at *6 ("[T]o the extent putative class members know or should know that their FLSA claims are subject to a two- or three-year statute of limitations, they are presently enjoying a court's order that freezes the running of the clock and are reasonable in believing that the order is effective until formal notice of the lawsuit is issued."); *Burger v. Scott*, 317 F.3d 1133, 1142 (10th Cir. 2003) ("[E]quitable tolling may be applied where a court has led a particular plaintiff to believe that he or she had done all that is required under the circumstances"). This Court finds that February 28, 2024, is a stopping point at which Case Manager RNs could no longer reasonably expect the *Fedor* lawsuit to preserve their FLSA claims.  *See* Pl.'s Mot. for Equitable Tolling at 11.

As noted previously, it is "well established" that "the statute of limitations for violations of the . . . overtime provisions of the [FLSA] runs anew with each paycheck." *Figueroa*, 633 F.3d at 1134.  Blanton asserts that UHS improperly failed to pay her overtime back to approximately November 2013.  Compl. ¶ 14.  Both sides acknowledge that some portion of Blanton's FLSA claims will be time-barred.  *Id.* ¶ 52 n.1; Doc. 26 at 11 n.6.  It is unnecessary in this Order to precisely determine which FLSA claims will be time-barred.  Rather, it will be up to Plaintiff to prove her FLSA claims going forward, under the tolling rubric set forth in this Order.

In conclusion, the Court DENIES Defendant's motion to dismiss Plaintiff's FLSA claims, and GRANTS Plaintiff's motion for equitable tolling of those claims. Because the Court does not dismiss Plaintiff's FLSA claims, it is unnecessary to consider UHS' arguments regarding lack of

subject matter jurisdiction over state law claims.  *See* Def.'s Mot. to Dismiss at 19–20; Pl.'s Resp. to Def.'s Mot. to Dismiss at 18–19; Doc. 24 at 11.

**II.    NMMWA Claims**

Plaintiff Blanton also brings individual and class claims under the NMMWA.  For the reasons below, this Court DENIES UHS' motion to dismiss and/or strike Plaintiff's individual and class NMMWA claims.[15]

### A. Legal Standards

The standards for a motion to dismiss under Rule 12(b)(6) are as set out above.

Under Rule 12(f), the Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f); *see also* Fed. R. Civ. P. 23(d)(1)(D) (permitting courts to issue orders that "require that the pleadings be amended to eliminate allegations about representation of absent persons and that the action proceed accordingly").  "Although courts typically assess the viability of class claims at the certification stage, district courts 'are permitted to make such determinations on the pleadings and before discovery is complete when it is apparent from the complaint that a class action cannot be maintained.'"  *Faulhaber v. Petzl Am., Inc.*, 656 F. Supp. 3d 1257, 1271 (D. Colo. 2023) (quoting *Elson v. Black*, 56 F.4th 1002, 1006 (5th Cir. 2023)).  "A court may grant a motion to strike class allegations where the pleading makes clear that the purported class cannot be certified and no

---

[15] Plaintiff's motion to strike Defendant's reply brief all or in part regarding Defendant's state law arguments is also denied.  Plaintiff argues that Defendant's reply raised new arguments and new evidence.  *M.D. Mark, Inc. v. Kerr-McGee Corp.*, 565 F.3d 753, 768 n.7 (10th Cir. 2009) ("[T]he general rule in this circuit is that a party waives issues and arguments raised for the first time in a reply brief[.]").  However, this Court finds that UHS did not make "new" arguments, but rather, provided additional authority to respond to Plaintiff's response to arguments UHS raised in its initial brief regarding *American Pipe* tolling and "continuing course of conduct" under New Mexico law.  Def.'s Resp. to Pl.'s Mot. to Strike at 3–9; *see James v. Boyd Gaming Corp.*, 522 F. Supp. 3d 892, 903–04 (D. Kan. 2021). Specifically, the "new evidence" Plaintiff objects to is not new factual evidence, but New Mexico state administrative guidance that supports UHS' position regarding "continuing course of conduct."  Def.'s Resp. to Pl.'s Mot. to Strike at 7.  This Court has considered all the arguments in the motion to dismiss briefing, as well as the motion to strike Defendant's reply brief briefing, in ruling on all the motions before this Court.

amount of discovery would change that determination." *Id.* (quoting *Cnty. of Dorchester, S.C. v. AT & T Corp.*, 407 F. Supp. 3d 561, 565–66 (D.S.C. 2019)); *see also In re Syngenta AG MIR 162 Corn Litig.*, No. 14-MD-2591, 2016 WL 1391045, at *2 (D. Kan. Apr. 7, 2016).

The movant bears the burden of "conclusively" showing that a plaintiff "will be unable to establish facts that would make class treatment appropriate." *Faulhaber*, 656 F. Supp. 3d at 1271 (internal citation omitted).

<u>B. Applicable Statutes of Limitations</u>

Under the applicable NMMWA statutes of limitations, Blanton's NMMWA claims are time-barred, absent application of a tolling doctrine. Two NMMWA provisions are at issue.

First, N.M. Stat. Ann. 1978, § 37-1-5 provides in full:

> A civil action to enforce any provision of Chapter 50, Article 4 NMSA 1978 shall be commenced within three years after a violation last occurs. The three-year period shall be tolled during a labor relations division of the workforce solutions department investigation of an employer, but such an investigation shall not be deemed a prerequisite to a person bringing a civil action, nor shall it operate to bar a civil action brought pursuant to Chapter 50, Article 4 NMSA 1978.

Additionally, N.M. Stat. Ann. 1978, § 50-4-32, provides in full:

> A civil action to enforce any provision of Chapter 50, Article 4 NMSA 1978 may encompass all violations that occurred as part of a continuing course of conduct regardless of the date on which they occurred.

Taken together, this Court finds that New Mexico courts would find that the plain meaning of this statutory language, as relevant here, is as follows. *See Rivera v. McCoy Corp.*, 240 F. Supp. 3d 1150, 1155 (D.N.M. 2017) ("New Mexico courts first consider and apply the plain meaning of statutory language." (internal quotation and marks omitted)).

- A NMMWA plaintiff must commence a lawsuit within three years after the last violation,

- unless the New Mexico Department of Workforce Solutions' Labor Relations Division is conducting an investigation of an employer, which tolls that three-year statute of limitations against that employer.

- If a NMMWA plaintiff commences a lawsuit within three years after the last violation, that lawsuit may encompass all violations that occurred as part of an employer's "continuing course of conduct" regardless of the date on which those violations occurred.

This reading of the statutes' plain language, taken together, squares with principles of statutory construction under New Mexico's Uniform Statute and Rule Construction Act ("USRCA").  *See* N.M. Stat. Ann. 1978, §§ 12-2A-2–7, 12-2A-18–19.  Most pertinently, those principles include that a statute is read in the context in which it is applied, and that a statute should be constructed to give effect to their entire text.  *See* N.M. Stat. Ann. 1978, §§ 12-2A-18.A(2), 12-2A-20.A.

Although the plain meaning of the statute is clear, if it was not, under the New Mexico USRCA, after considering the text of a statute and its context, New Mexico courts move to considering "aids to construction" such as state administrative guidance.  *See* N.M. Stat. Ann. 1978 § 12-2A-20.B (referencing "an administrative construction of the same or similar statute or rule of this state").  New Mexico's formal regulations for its Labor Relations Division include N.M. Admin. Code § 11.1.4.102, "Deadline for filing a wage claim," which provides in full:

> A wage claimant must file a wage claim with the LRD against an employer within three years of that employer's last violation of the wage and hour laws as to the wage claimant. As long as any portion of the wage claim falls within the three-year time limit, the LRD will investigate the claim as far back as the beginning of the continued course of conduct as to the wage claimant or, in the case of a directed investigation, as far back as the course of conduct actually began as to any employee.

N.M. Admin. Code § 11.1.4.102. The New Mexico Department of Workforce Solutions has also published an Investigations Manual for its Labor Relations Division.[16] The Investigations Manual explains that N.M. Admin. Code § 11.1.4.102 "derives from two statutes," § 37-1-5 and § 50-4-32.

Together, the state administrative regulation and guidance support that an NMMWA plaintiff must meet the applicable statute of limitations by commencing a lawsuit within three years after the last violation, and "[a]s long as any portion of the wage claim falls within the three-year time limit," if a "continuing course of conduct" exists, the plaintiff may recover damages back to the beginning of the continued course of conduct as to the plaintiff.

Blanton argues that there is "no statute of limitations with respect to" her NMMWA claims because UHS' violations were part of a "continuing course of conduct." Pl.'s Resp. to Def.'s Mot. to Dismiss at 1, 2–9. But Blanton's interpretation would read § 37-1-5 out of existence if § 50-4-32 applies. Def.'s Mot. to Dismiss at 10-11; *see* N.M. Stat. Ann. 1978, § 12-2A-18.A(1)-(3). State administrative guidance does not support Blanton's reading. Nor do federal cases interpreting the NMMWA. Rather, as UHS points out, those cases at most imprecisely state that "no" limitations apply if a continuing course of conduct exists—but only where the plaintiff met the statute of limitations by commencing a lawsuit within three years of the last alleged violation. Doc. 24 at 6. *See*, *e.g.*, *Felps*, 336 F.R.D. at 681 ("[A]ssuming *arguendo* that Section 37-1-5 is the operative provision," and where "Defendants do not contest that Plaintiff himself has brought his claims within the three-year limitations period," "where a continuing course of conduct is involved, there is essentially no limitations period for a NMMWA claim").[17]

---

[16] N.M. Dep't of Workforce Solutions, *Investigation Manual*, Labor Relations Division (July 30, 2025).

[17] The imprecision in *Felps* appears to be the conflation of the "statute of limitations," i.e. § 37-1-5, with the "statute of repose," i.e. § 50-4-32. *See China Agritech*, 584 U.S. at 736 n.1 ("A statute of limitations begins to run when the

Here, Blanton's state claims are time-barred under the NMMWA, absent tolling, because Blanton does not allege a violation against her within three years of filing the lawsuit. Blanton filed suit in 2024, and last worked for UHS as a "Case Manager RN" in 2018. Pl.'s Compl. ¶¶ 13–14. This Court finds that Blanton has adequately alleged a "continuing course of conduct" by UHS in alleging a policy and practice that resulted in her being improperly classified as overtime-exempt, dating back to November 2013, when Blanton began employment as a Case Manager RN. Pl.'s Resp. to Def.'s Mot. to Dismiss at 2–4; Pl.'s Compl. ¶¶ 14, 42–46.[18]; *see Felps*, 336 F.R.D. at 667–68, 671–72, 680–81 (where plaintiffs identified defendant's policy and practice of misclassifying workers as exempt, plaintiffs satisfied commonality under Fed. R. Civ. P. 23, and also adequately alleged a "continuing course of conduct" under § 50-4-32). But, because Blanton does not allege a violation against her within three years of filing the lawsuit, Blanton's NMMWA claims are statutorily time-barred (unless a tolling doctrine applies to § 37-1-5). *Id.* at 681.

### C. *American Pipe* and Equitable Tolling

The parties disagree whether *American Pipe* tolling doctrine applies to Plaintiff's NMMWA claims. *See Am. Pipe & Const. Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*"). Although Plaintiff styles her NMMWA claims as a Rule 23 class action, state law governs the

---

cause of action accrues—that is, when the plaintiff can file suit and obtain relief. A statute of repose, by contrast, begins to run on the date of the last culpable act or omission of the defendant.") (internal citations, quotations, and punctuation omitted); *see also Hogan v. Pilgrim's Pride Corp.*, 73 F.4th 1150, 1156–57 (10th Cir. 2023) (recognizing distinction).

[18] The Parties dispute whether, for Plaintiff to statutorily bring her NMMWA claims, a "continuing course of conduct" must be continuing at the time Plaintiff filed her complaint or within the three year statute of limitations of § 37-1-5. Doc. 24 at 4; *see also* Def.'s Mot. to Dismiss at 3, 10, 12; Pl.'s Resp. to Def.'s Mot. to Dismiss at 3 & n.1; Pl.'s Mot. to Strike at 2; Def.'s Resp. to Pl.'s Mot. to Strike at 3–7, 13–14; Doc. 31 at 2–5. Like *Felps*, this Court finds that it must be continuing within the three-year statute of limitations of § 37-1-5. *Felps*, 336 F.R.D. at 681 (finding a "continuing course of conduct" where "Defendants do not contest that Plaintiff himself has brought his claims within the three-year limitations period"). The plain meaning of the applicable statutes supports this construction, as well as administrative guidance. *See* § 37-1-5 ("A civil action to enforce any provision of Chapter 50, Article 4 NMSA 1978 *shall* be commenced within three years after a violation last occurs.") (emphases added); *see also* N.M. Admin. Code § 11.1.4.102 ("As long as any portion of the wage claim falls within the three-year time limit …").

application of equitable tolling doctrines to the statute of limitations. *Graham v. Teller County, Colo.*, 632 F. App'x 461, 463 (10th Cir. 2015). For the reasons set forth below, this Court finds that, for *American Pipe* purposes, Plaintiff is a part of the class of NMMWA claims asserted in *Fedor*; and that New Mexico courts would find that *American Pipe* tolling would apply to NMMWA claims, specifically to Plaintiff's class claims, notwithstanding *China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018).

First, Plaintiff is a part of the class of NMMWA claims asserted in *Fedor* for *American Pipe* purposes. The parties specifically dispute that Blanton is a part of the *Fedor* NMMWA class. *See* Def.'s Mot. to Dismiss at 2, 8, 9 n.6; Pl.'s Resp. to Def.'s Mot. to Dismiss at 13–15; Pl.'s Mot. to Strike at 4 & n.2; Doc. 27 at 17; Doc. 31 at 6–7. For much the same reasons articulated above, and supported by the *Fedor* Court's sanctions findings, this Court finds that the *Fedor* parties understood "care coordinators" who were registered nurses (like Blanton) to be *Fedor* NMMWA class members regardless of their specific job title. *See supra*; *see also Fedor*, No. 17-cv-13-MV-SCY, Dkt. No. 3 ¶¶ 2-3, 17; Dkt. No. 104 at 2–3; Dkt. No. 104-1 at ¶¶ 15, 16, 22; Dkt. No. 110 at 2; Dkt. No. 110-1; *cf.* Compl. ¶¶ 8–27, 30–32, 44–45, 62, 84–91. As such, this Court finds that the *Fedor* NMMWA class complaint "notifie[d] the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate in the judgment," such that *American Pipe* tolling might apply to the *Blanton* NMMWA class plaintiffs. Pl.'s Resp. to Def.'s Mot. to Dismiss at 13–15. *See Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 353 (1983); *Fullerton v. Energen Res. Corp.*, No. 1:19-cv-00346-RB-KRS, 2020 WL 953976, at *3–4 (D.N.M. Feb. 27, 2020) (finding that *American Pipe* tolling applies to subsequent state law claims where those claims assert the same cause of action and arise from the same factual circumstances).

Second, this Court finds that New Mexico courts would find that *American Pipe* tolling applies to a plaintiff bringing subsequent, similar claims as to *Fedor*'s NMMWA class claims. Fedor brought NMMWA class claims under Rule 23. *Fedor*, Dkt. No. 3 ¶ 3, ¶¶ 26–33. As such, the animating principles underlying *American Pipe*'s analysis of Rule 23, such as the efficiency and economy of litigation, apply to this litigation. *See State Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223 (10th Cir. 2008) (holding that *American Pipe* tolling applies to a class action bringing a Colorado state law class claim, because Colorado provides an opt-out scheme for class actions similar to the federal Rule 23). Following *Boellstorff*, this Court finds that New Mexico courts would apply *American Pipe* tolling to subsequent claims to *Fedor*'s NMMWA class claims, even though New Mexico state case law is admittedly spare. *Cf. Boellstorff*, 540 F.3d at 1228 (noting that Colorado Supreme Court had not spoken to the precise issue). Of note, the New Mexico legislature's decision to include greater remedial protections for workers under NMMWA than federal law, such as the "continuing course of conduct" provision of § 50-4-32, and the more lenient "similarly situated" class certification standard of § 50-4-26(D), supports that New Mexico would be more inclined to apply *American Pipe* tolling. Pl.'s Resp. to Def.'s Mot. to Dismiss at 6–9, 12–13; *see Boellstorff*, 540 F.3d at 1233 ("[A]pplication of the tolling doctrine here would not undermine the policy choices embodied by Colorado's statute of limitations").

This Court also finds that New Mexico courts would find that, in the unique circumstances of this case, *American Pipe* tolling applies not only to Plaintiff's individual NMMWA claims, but also to Plaintiff's class NMMWA claims, notwithstanding *China Agritech*. In *China Agritech*, the Supreme Court answered this question no: "Upon denial of class certification, may a putative class member, in lieu of promptly joining an existing suit or promptly filing an individual action, commence a class action anew beyond the time allowed by the applicable statute of limitations?"

584 U.S. at 735–36. The Supreme Court held that the "efficiency and economy of litigation" that support the tolling of individual claims under *American Pipe* do not support the maintenance of untimely successive class actions. *Id.* at 740. The Tenth Circuit noted in *dicta* that *China Agritech* applies with equal force to class actions that are voluntarily dismissed, rather than denied certification. *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 1000 n.3 (10th Cir. 2021). "Although a pending, putative class action (even if the class is ultimately not certified) tolls the limitations period for individual claims, it does not delay the expiration of the limitations period for new class-action claims." *Id.* For the reasons set forth herein, this Court does not believe *Crawley* applies here.

But, *China Agritech* and *Crawley* focused on the concerns that arise when a district court denies class certification or plaintiffs voluntarily dismiss the suit. *Id.* ("[E]conomy of litigation favors delaying [individual] claims until after a class-certification denial."); *see also id.* at 743 ("as each class is denied certification, a new named plaintiff could file a class complaint that resuscitates the litigation."). Indeed, in *China Agritech*, district courts had denied class certification twice. *Id.* at 736–37. Some district courts have distinguished scenarios where class certification was not denied in the prior lawsuit. *See Famular v. Whirlpool Corp.*, No. 16-cv-944-VB, 2021 WL 395468, at *2 (S.D.N.Y. Feb. 3, 2021) (distinguishing *China Agritech* where prior class action was voluntarily dismissed). Plaintiff requests this Court follow those decisions. Pl.'s Resp. to Def.'s Mot. to Dismiss at 15-17; Doc. 31 at 5; *cf.* Def.'s Mot. to Dismiss at 18; Doc. 24 at 8-10; Doc. 27 at 8-9, 16 (UHS' arguments).[19]

---

[19] Plaintiff also cited *Walker v. Life Ins. Co. of Sw.*, Case No. CV 10-09198-JVS, 2018 WL 3816716, at *5 (C.D. Cal. July 31, 2018), for this principle. Pl.'s Resp. to Def.'s Mot. to Dismiss at 16–17. As UHS points out, *Walker* distinguished *China Agritech* on the different rationale that the courts' dismissal and reinstatement of the claims in the same case did not affect tolling or preclude class certification of the claims in the same case. Doc. 24 at 9–10; *see Walker*, 2018 WL 3816716, at *5 (noting that "certain absent class members may be time-barred from brining a successive class action"). *Walker* is not squarely on point with the unique facts of this case.

Given the unique circumstances of this case, this Court finds that New Mexico courts would find *China Agritech* distinguishable for multiple reasons. First, class certification was not denied in *Fedor*. Rather, as noted above, the parties settled but the case has not been dismissed. Further, Plaintiff's asserted class was excised from the *Fedor* settlement agreement without any chance to obtain relief. It is unclear when Blanton, or other similarly situated individuals, were first notified of their exclusion from the settlement agreement. The complex, litigious and protracted proceedings in *Fedor* likely made it difficult for any putative class member to understand whether a settlement had been reached and, if so, whether they were included in it. The *Fedor* defendants' verboten removal of certain employees' data only worsened that confusion. Indeed, *Fedor* has not been dismissed because of sanctions arising from UHS' actions during settlement, after long delays in litigating the case. The Court imagines that even the most diligent plaintiff would find *Fedor*'s proceedings nearly impossible to follow. *Cf. China Agritech*, 584 U.S. at 750 (Sotomayor, J., concurring) (noting that, in the Rule 23 context, there "is no mechanism for absent putative class members to learn that a putative class action is pending" because there is "no requirement of precertification notice").

Once the *Fedor* settlement was finalized, Blanton promptly sued on behalf herself and other Case Manager RNs. Thus, the Court finds that Blanton reasonably "anticipated [her] interests would be protected by a class action but later learned that a class suit could not be maintained for reasons outside [her] control." *Cal. Pub. Emps.' Ret. Sys. v. ANZ Sec., Inc.*, 582 U.S. 497, 511–13 (2017). Blanton was sensible in assuming no action was required to preserve her claims (at least until February 28, 2024), in a way the *China Agritech* putative plaintiffs were not. This scenario does not incite the *China Agritech* Court's concern of "limitless bites at the apple" because it is not duplicative; Blanton represents a class of employees who were never

27

afforded the opportunity for class-wide relief through settlement or certification. *Cf. China Agritech*, 584 U.S. at 754 (Sotomayor, J., concurring) (explaining that one of *American Pipe*'s foremost concerns was avoiding "needless duplication").

The use of *American Pipe* in the present case also comports with New Mexico's equitable tolling doctrine. *See id.* at 745 (referring to "*American Pipe*'s equitable-tolling exception to statutes of limitations"); *see generally* Jeremy L. Brown, *The Misunderstood Role of Reliance in American Pipe Tolling*, 88 U. CHI. L. REV. 685 (2021). New Mexico courts "permit[] a plaintiff to avoid the bar of the statute of limitations if despite the exercise of all due diligence he is unable to obtain vital information bearing on the existence of his claim." *Est. of Brice v. Toyota Motor Corp.*, 373 P.3d 977, 981 (N.M. 2016). Equitable tolling demands a plaintiff to prove elements already evidenced in this case—(1) that the plaintiff has been pursuing their rights diligently and (2) that some extraordinary circumstance stood in their way. *Little v. Baigas*, 390 P.3d 201, 207 (N.M. Ct. App. 2016); *cf. China Agritech*, 584 U.S. at 743 (noting that *American Pipe* found tolling "permissible in the circumstances because plaintiffs who later intervened to pursue individual claims had not slept on their rights").

Blanton has shown both diligence and "an extraordinary event beyond [] her control." *Little*, 290 P.3d at 207. As detailed above, the *Fedor* litigation produced "inevitable court delay" which warrant tolling to prevent injustice. *Snow v. Warren Power & Mach., Inc.*, 354 P.3d 1285, 1290 (N.M. 2015) ("Flatly prohibiting tolling in this instance, however, seems to defeat the purpose of providing equitable relief when circumstances beyond a party's control, such as inevitable court delay, prevent that party from timely filing."). This Court's review of UHS's sanctionable behavior, *Fedor*, 2025 WL 1124529, at *5 (finding that defendants engaged in dismissive and dilatory tactics), and Plaintiff's responsive filing following settlement, further

28

supports equitable tolling of the class claims. *Cf. Est. of Brice*, 373 P.3d at 985 (explaining that, for purposes of equitable tolling, plaintiff must "exercise ordinary diligence, not extraordinary clairvoyance"). Lastly, as noted above, the New Mexico legislature's decision to include greater remedial protections for workers under NMMWA than federal law supports that New Mexico courts would find *American Pipe* tolling to apply to this case. *See Famular*, 2021 WL 395468, at *2 (noting that New York's highest court had held the New York legislature intended to preserve the rights of class action plaintiffs).

UHS urges this Court to follow *Armendariz v. Santa Fe Cnty. Bd. of Comm'rs*, 331 F. Supp. 3d 1245 (D.N.M. 2018). Def.'s Mot. to Dismiss at 13, 18; Doc. 24 at 9. *Armendariz* held that "*China Agritech* forecloses any arguments offered by Plaintiffs that tolling should include class action claims. The best *American Pipe* offers Plaintiffs—if it applies at all—is a tolling of the individual claims of putative class members; it would not allow a successive class action claim based on the state law claims." *Armendariz*, 331 F. Supp. 3d at 1249–52 (citing *China Agritech*, 584 U.S. at 740). This Court declines to do so given the unique circumstances of this case. *Armendariz* was a case, unlike this one, where the prior class action was voluntarily dismissed by the named plaintiffs. *Id.* at 1248. Of note as well, the *Armendariz* Court equitably tolled those plaintiffs' statute of limitations on different grounds than *American Pipe* tolling. *See id.* at 1252–60.

As such, this Court finds that New Mexico courts would find that *American Pipe* tolling would apply to this Plaintiff's individual and class NMMWA claims. *State ex rel. King v. B & B Inv. Grp., Inc.*, 329 P.3d 658, 669 (N.M. 2014) ("The application of equitable doctrines and the granting of equitable relief rests in the sound discretion of the district court."). The Court emphasizes that its holding and attendant analysis is confined to this case. The Court DENIES

UHS' motion to dismiss, under Rule 12(b)(6), and in the alternative to strike, under Rule 12(f), Plaintiff's individual and NMMWA class action claims.[20]

## CONCLUSION

For the reasons discussed above, the Court DENIES Defendant's motion to dismiss and in the alternative to strike Plaintiff's FLSA individual and collective claims, and GRANTS Plaintiff's motion for equitable tolling of those claims. Tolling began on May 26, 2017, and terminated on February 28, 2024. The Court DENIES Defendant's motion to dismiss and in the alternative to strike Plaintiff's NMMWA individual and class action claims, and DENIES Plaintiff's motion to strike Defendant's reply to Defendant's motion to dismiss.

**IT IS SO ORDERED.**

_____
**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**

---

[20] UHS also moves to strike the NNMWA class claims based on the argument that the temporal scope of the proposed class, from June 19, 2009 to the present, extends beyond UHS' provision of care coordination services in 2013, and UHS' discontinuation of its pay practice by 2018. Def.'s Mot. to Dismiss at 18; *see also* Pl.'s Resp. to Def.'s Mot. to Dismiss at 17-18; Doc. 24 at 10. UHS can renew this argument on future motions for class certification.