**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| JESSICA BLANTON, on behalf of herself and all others similarly situated, | § § § § | |
| Plaintiff, | § § § | |
| | § | Civil Action No. 1:24-CV-00484-DHU-JMR |
| v. | § § § | |
| UNITED HEALTHCARE SERVICES, INC., | § § § | |
| Defendant. | § § | |

**PLAINTIFF'S RESPONSE TO DEFENDANT'S
MOTION TO CERTIFY ISSUE FOR INTERLOCUTORY APPEAL**

Plaintiff files this Response in opposition to Defendant's Motion to Certify Issue for Interlocutory Appeal (the "Motion"). As discussed below, Defendant's Motion fails because it mischaracterizes the Court's narrow tolling ruling and seeks certification of a question that is broader than the underlying holding. As a result, it fails to meet any of § 1292(b)'s demanding requirements.

## I.    LEGAL STANDARD

District courts have "first line discretion to allow interlocutory appeals." *Swint v. Chambers Cnty., Comm'n*, 514 U.S. 35, 47 (1995). An interlocutory appeal under § 1292(b) is allowed only if all three of the following factors are met: (1) the issue involves a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) answering that question would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The moving party bears the burden of establishing each element. *West v. Bam! Pizza Mgmt., Inc.*, 2025 WL 2879940, at *1 (D.N.M. Oct. 9, 2025) (Davenport, J.) (citing *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994)). As this Court has explained, appeals under § 1292(b) are not meant to be routine:

Although § 1292(b) provides a path to appellate review before the final disposition of a case, it is employed "sparingly" *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004). Interlocutory appeals "tend to disrupt and delay the underlying proceedings," *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006), and can have a "debilitating effect on judicial administration," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974). These concerns are no less pressing in § 1292(b) appeals. *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996); *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994). Section 1292(b) is thus "not intended to make denials of summary judgment routinely appealable." *Ahrenholz v. Bd. of Trustees of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Rather, courts permit § 1292(b) appeals in those "extraordinary cases" where "extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *Id.* (quoting S. Rep. 2434, 85th Cong., 2d Sess. 1 (1958)); *see also Koehler*, 101 F.3d at 865 (explaining that § 1292(b) was intended as a "rare exception to the final judgment rule that generally prohibits piecemeal appeals").

*West*, 2025 WL 2879940, at *1.

## II.    DISCUSSION

### a.    Defendant Mischaracterizes the Court's Holding and Proposes a Broader Question Than the Question Addressed by the Order

For a request for interlocutory appeal under § 1292(b) to be appropriate, the question presented for certification must be the actual question addressed by the order being appealed and must accurately reflect the court's holding. *See Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 233 F. Supp. 2d 16, 28 (D.D.C. 2002) (denying motion for interlocutory appeal, noting that "by mischaracterizing the intent and effect of this Court's Orders, defendants have created a legal question, for which they now seek certification, where none exists"); *see also In re Domestic Airline Travel Antitrust Litig.*, 2025 WL 2760374 at *3 (D.D.C. Sept. 29, 2025) (denying motion for interlocutory appeal where "Defendants' characterizations of this Court's holdings [were] inaccurate"); *Mar Vista Ent., LLC v. THQ Nordic AB*, 2024 WL 5642556, at *3 (C.D. Cal. Dec. 24, 2024) ("the question that [plaintiff] attempts to certify is not an actual question presented by the Prior Order, which precludes the granting of [plaintiff]'s Motion"). Thus, if the court's holding is narrow, the question to be certified should be similarly limited in scope. *See Ridgeway v. Wal-*

*Mart Stores, Inc.*, 2015 WL 4463923, at *3 (N.D. Cal. July 21, 2015) (denying motion for interlocutory appeal because "[defendant]'s proposed questions are not appropriate for certification for interlocutory appeal as they are broader than and are inaccurate reflections of the narrow holdings issues in this Court's prior order"); *see also Mest v. Cabot Corp.*, 2004 WL 1058155, at *2 n.12 (E.D. Pa. May 10, 2004) (denying motion for interlocutory appeal where "[t]he Court's holding was not nearly so broad" as described by plaintiffs). As the Court explains in its Order, because Plaintiff's claims arise under state law, "state law governs the application of equitable tolling doctrines to the statute of limitations." Order, p. 24 (citing *Graham v. Teller County, Colo.*, 632 F. App'x 461, 463 (10th Cir. 2015)). Thus, the question answered by the Court is not whether, broadly speaking, "*American Pipe* tolling applies to successive class claims" (Motion, p. 2), but whether, applying New Mexico equitable tolling standards to the present facts, "New Mexico courts would find that *American Pipe* tolling would apply to NMMWA claims, specifically to Plaintiff's class claims, notwithstanding *China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018)." Order, p. 24.

Defendant's broad framing of the question to be certified reflects the underlying problem with Defendant's Motion: it misstates the Court's holding and ignores the analysis underlying the decision. For example, in summarizing the holding, Defendant claims that the Court "held that *American Pipe* tolling applies on a class basis because there was not a ruling on class certification in *Fedor*." Motion, p. 5.[1] This is a blatant mischaracterization of the Court's reasoning. Rather than relying on a single distinction, the Court provides a list of "unique circumstances" that explain why "New Mexico courts would find *China Agritech* distinguishable," including: (1) the absence

---

[1] Defendant may argue that it does, in fact, quote the correct holding on page 2 of its Motion. However, for the rest of the Motion, including the entire "Discussion" section, Defendant ignores (1) the factual findings and legal arguments underlying the Court's decision and (2) that the relevant question involves a prediction of how New Mexico courts would apply equitable tolling to NMMWA class claims.

of a class certification denial; (2) the removal of the proposed class from the *Fedor* settlement "without any chance to obtain relief;" (3) the complexity and protracted nature of the *Fedor* litigation meant that "even the most diligent plaintiff would find *Fedor*'s proceedings nearly impossible to follow;" (4) the reasonableness of Plaintiff's and class members' assumption that no action was required to preserve their claims; (5) the fact that this case is not duplicative of *Fedor* (and therefore avoids the concern of "limitless bites at the apple" present in *China Agritech*); and (6) Defendant's dilatory and sanctionable behavior in *Fedor*. Order, pp. 27-28.[2]

In addition to mischaracterizing the factual underpinnings of the Order, Defendant ignores the legal basis for the decision and seemingly misunderstands the scope of the holding. Based on the broad question posed by Defendant and its mischaracterization of the Court's holding, it appears Defendant believes the Court's holding relates to whether *China Agritech* allows for the tolling of successive class claims.[3] However, that is not the question the Court answers, as the Court's phrasing of its holding makes clear. As noted above, the Court held that "New Mexico courts would find that *American Pipe* tolling would apply to NMMWA claims, specifically to Plaintiff's class claims, **notwithstanding** *China Agritech*." Order, p. 24 (emphasis added). Thus, implicit in the Court's holding is the assumption that *China Agritech* generally stands against the application of *American Pipe* tolling to successive class claims,[4] and the relevant question is whether New Mexico courts applying the New Mexico standards for equitable tolling would

---

[2] Defendant's misstatement of the holding is similar to *In re Domestic Airline Travel Antitrust Litigation*, in which the defendant identifies one reason underlying the court's holding and improperly frames it as the *only* reason for the court's holding. *In re Domestic* at *4. The court notes that, as here, the defendant "disregards most of [the] Court's Memorandum Opinion," including the discussion of the evidence, the applicable legal standard, and the numerous arguments supporting the court's holding. *Id.*

[3] As discussed below, the circuit court cases Defendant cites as evidence of a "substantial ground for difference of opinion" also suggest that Defendant misunderstands the relevant question answered by the Court. *See* Section II(c), pp. 6-8, *infra*.

[4] Plaintiff views this as an assumption *arguendo*.

nevertheless find that *American Pipe* tolling applies to class claims under the NMMWA under the present circumstances.  In answering this question in the affirmative, the Court not only discusses New Mexico's equitable tolling doctrine and its application to the "unique circumstances" of this case (Order, pp. 28-29), it identifies certain unique characteristics of the NMMWA that weigh in favor of the application of tolling.[5] This includes the "greater remedial protections for workers under NMMWA than federal law" and that New Mexico courts have interpreted the class certification requirements of § 50-4-26(D) more leniently than the requirements of Rule 23. Order, p. 25.

By ignoring the actual analysis performed by the Court and mischaracterizing the Court's holding, Defendant has presented for certification a question that is broader than (and fundamentally different from) the question addressed by the Court in its Order. This is impermissible and requires that the Motion be denied.

**b.** **Defendant Does Not Present a "Controlling Question of Law"**

"[A] question of law involves the meaning of a statutory or constitutional provision, regulation, or common law doctrine, as opposed to a particular application of law to facts. *Palczynsky v. Oil Patch Grp., Inc.*, 2025 WL 1744515, at \*2 (D.N.M. June 24, 2025) (citations omitted). Such a question is "controlling" if it would "materially affect the outcome of the case." *West v. Bam! Pizza Mgmt., Inc.*, 2025 WL 2879940, at \*2 (D.N.M. Oct. 9, 2025) (Davenport, J.) (quoting *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002)).

As discussed above, the question Defendant asks to be certified is not the question actually addressed by the Order.[6] As a result, as currently framed, the question cannot be "controlling," as

---

[5] Indeed, for the avoidance of doubt as to its narrow scope, "[t]he Court emphasizes that its holding and attendant analysis is confined to this case."

[6] *See* Section II(a) (pp. 2-3), *supra*.

it is irrelevant to the motion and therefore cannot affect the outcome of the case. Although the question could be rephrased to accurately address the question actually answered by the Court, this would not change the outcome, as it would cease to be a "question of law." The question of how New Mexico's equitable tolling doctrine applies to the present circumstances requires a review of the underlying facts. As discussed by the Court, it requires a demonstration that the plaintiff has been pursuing their rights diligently and that some extraordinary circumstance stood in their way. Order, p. 28. This is consistent with the view of New Mexico courts that determinations regarding equitable tolling are necessarily fact-specific. *See Slusser v. Vantage Builders, Inc.*, 2013-NMCA-073, ¶ 13, 306 P.3d 524, 530 ("We determine the applicability of equitable tolling on a case-by-case basis, with an eye toward 'cases where a litigant was prevented from filing suit because of an extraordinary event beyond his or her control.'") (quoting *Ocana v. Am. Furniture Co.*, 2004-NMSC-018, ¶ 15, 135 N.M. 539, 91 P.3d 58). To the extent there is a pure question of law, it is whether the Court accurately described New Mexico's equitable tolling standard. The question of whether the Court correctly applied that standard to the facts of the case is not a question of law and is not appropriate for interlocutory appeal under § 1292(b).

c.   **Defendant Has Not Shown a Substantial Ground for Difference of Opinion**

As with the "controlling question of law" requirement, Defendant's argument regarding the existence of "substantial ground for difference of opinion" fails at the threshold because it does not identify disagreement with the question this Court actually answered. As discussed above, the Court's holding was a state-law predictive ruling, not a free-floating interpretation of federal tolling doctrine. Thus, the pertinent question is not whether federal appellate courts have read *China Agritech* broadly as a matter of federal class-action practice; it is whether New Mexico courts would apply tolling to NMMWA claims in the unique circumstances presented here. Thus,

relevant cases—cases that could demonstrate substantial ground for difference of opinion—are cases that address the state law issue at hand.[7]

The three circuit court cases Defendant chose to cite are further evidence of Defendant's misunderstanding of the question presented by the Court's Order. Given that the relevant question is whether New Mexico courts would apply *American Pipe* tolling to class claims under the NMMWA, one would expect Defendant to cite to cases that discuss (1) New Mexico's equitable tolling standards; (2) how those standards have been applied to the NMMWA; or (3) how those standards have been applied to statutes similar to the NMMWA. However, Defendant does not cite to any such cases. Instead, it cites to three cases that discuss *China Agritech* and whether it precludes the tolling of class claims. Defendant provides minimal discussion on the cases and no analysis on whether the discussion in the cases relates in any way to equitable tolling in New Mexico or to the NMMWA.

While there are circumstances in which it may be appropriate to review non-state-specific federal cases in determining how a state court would rule on an issue of state law (or in determining whether there is substantial ground for difference of opinion as to that state law), this is not one of those situations. For example, in *Boellstorff*, in predicting whether the Colorado Supreme Court would apply *American Pipe* tolling when a decision on class certification had not yet been made, the Tenth Circuit relied in part on federal cases interpreting *American Pipe*. *Boellstorff* at 1228 ("we will consult Colorado cases in the first instance, but will also rely on federal cases interpreting *American Pipe*."). However, the reason the court determined it was appropriate to rely on federal

---

[7] Although cases in which requests for interlocutory appeal under § 1292(b) address matters of state-law interpretation are not as common, courts resolve them by reviewing how other courts have addressed that specific state-law issue. For example, in *Johnson v. Chesapeake Louisiana, L.P.*, 87 F.4th 305, 310 (5th Cir. 2023), the Fifth Circuit identified a split in the law by reviewing how courts had interpreted the specific state laws at issue. *See also, Sayles v. Allstate Insurance Company*, 2017 WL 2985402, at *2 (M.D. Pa. July 13, 2017) (finding that substantial ground for disagreement existed where there were conflicting holdings of Pennsylvania state and federal courts addressing the specific Pennsylvania state law at issue).

cases was that "Colorado's Rule 23 is virtually identical to the Federal Rule, and so Colorado courts rely on cases applying the federal rule." *Id.* (internal quotation marks omitted). That is not the case here. As discussed above, it is well-established that § 50-4-26(D) (which provides the class mechanism for NMMWA claims) is "more lenient" than Rule 23 and the NMMWA generally provides "greater remedial protections for workers" than federal law. Order at 25. Thus, federal cases applying a federal standard to non-New Mexico laws are not relevant and cannot be grounds for a difference of opinion on how New Mexico courts interpret the NMMWA and the state's equitable tolling standard.[8]

### d. Defendant Has Not Shown That an Immediate Appeal Would Materially Advance the Ultimate Termination of the Litigation

Defendant's argument that a successful appeal will materially advance the termination of the litigation fails for multiple reasons. First, Defendant's position is that *any* appeal that seeks to remove class claims necessarily satisfies this requirement. Defendant states that eliminating the class will make discovery easier and less costly, remove the need for class certification motion practice, and remove the possibility of trial on a class basis. Motion at 6. Defendant comes to these conclusions without (1) providing any information on the size of the class or (2) discussing the specific claims being asserted in this case and how they relate to discovery issues. Rather, Defendant simply asks the Court to hold that the removal of class claims, without more, is sufficient to satisfy the "material advancement" requirement. This is not supported by caselaw[9]

---

[8] It is also worth noting that, even if non-New Mexico cases applying the federal standard were relevant here, Defendant would still need to make a complete argument and explain *why* they are relevant and how they relate to the question of how New Mexico courts would apply class tolling to the NMMWA. Defendant has made no such effort here.

[9] *See, e.g., Dukes v Wal-Mart Stores, Inc.*, 2012 WL 6115536, at *5 (N.D. Cal. Dec. 10, 2012) (holding that removal of class claims would not necessarily advance the termination of the litigation because "immediate appeal may be inappropriate where 'there is a good prospect that the certified question may be mooted by further proceedings,'" such as by a class certification motion) (quoting 16 *Federal Practice & Procedure § 3930* at n. 40 (2d ed.) (citing *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002); *Oneida Indian*

and, importantly, flatly defies the requirement that interlocutory appeals under § 1292(b) be reserved for "extraordinary cases."

Defendant cites two cases, neither of which support its position. The first, *Dahl v. Petroplex Acidizing, Inc.*, 2024 WL 406584 (D.N.M. Feb. 2, 2024), is a short order granting an unopposed motion for interlocutory appeal with minimal analysis. Defendant attempts to take advantage of the brevity of the order to suggest that it stands for the proposition that any limitation of collective or class claims will materially advance the ultimate termination of the litigation. However, the legal question in that case—whether *Bristol-Myers Squibb Co. v. Superior Court of California, San Francisco County*, 582 U.S. 255 (2017) applies to FLSA collectives—determines whether plaintiffs can bring national collective actions or are limited to collectives covering individuals only within the state in which the case is filed. This not only drastically affects the potential size of a collective, but, more importantly, determines whether the collective will span a company's operations across the country, which can have significant effects on the type and amount of discovery needed (particularly when defendants argue that certification of a multi-state collective is improper because operations differ from state-to-state). Needless to say, these issues are not present in the current case. The proposed class in this case is limited to individuals in a specific job title who all perform duties under the same contract in the same state. *See* Complaint (ECF 1) and Amended Answer (ECF 54) ¶ 62 (limiting class to "Case Manager RNs" employed in New Mexico) and ¶ 20 (Case Manager RNs were required to abide by the same agreement with the Human Services Department). As a result, there is significant overlap between the discovery necessary for individuals and discovery necessary for the class.

---

*Nation of N.Y. State v. Oneida County*, 622 F.2d 624, 628-29 (2d Cir. 1980); *United States v. Rent-A-Homes Sys. Of Ill., Inc.*, 602 F.2d 795, 797 (7th Cir. 1979)).

Defendant also cites to *In re Gold King Mine Release in San Juan Cnty., Colorado, on Aug. 5, 2015*, 2019 WL 4671515 (D.N.M. Sept. 25, 2019). In that case, the court held that the removal of 300 plaintiffs may materially advance the termination of the litigation. While it is possible that the removal of 300 claims could materially advance the termination of a case, it is unnecessary for Plaintiff to engage in that discussion here. *Gold King* does not support Defendant's position because Defendant has chosen not to provide the size of the proposed class in its Motion. Plaintiff's counsel has sought this information from Defendant multiple times (including when the class was carved out of the *Fedor* settlement), but has not received a firm number. However, Defendant has strongly indicated to Plaintiff's counsel that the number is *far* less than 300.

Finally, Defendant's claim that a successful appeal would turn the case "into a single-plaintiff action" is incorrect. As Defendant is now aware following the parties' settlement discussions during the stay of this case, Plaintiff's counsel has been contacted by approximately 25 individuals who wish to file their own claims and join this case if it can no longer proceed as a class action.[10]

## III.    CONCLUSION

For the reasons set forth above, Defendant's Motion should be denied.

Respectfully submitted,

*/s/  Travis M. Hedgpeth*

**TRAVIS HEDGPETH**
Texas Bar No. 24074386
**THE HEDGPETH LAW FIRM, PC**
3050 Post Oak Blvd., Suite 510
Houston, Texas 77056
Phone: (281) 572-0727
travis@hedgpethlaw.com

**Attorney for Plaintiff**

---

[10] *See* **Exhibit A**, Declaration of Travis M. Hedgpeth ¶ 4.

**CERTIFICATE OF SERVICE**

I hereby certify that I filed this document on April 20, 2026, and that notice of this filing will be

distributed to all counsel of record through the District's ECF system.

*/s/ Travis M. Hedgpeth*
Travis M. Hedgpeth
