**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

JESSICA BLANTON, on behalf of herself
and all others similarly situated,

Plaintiff,

v. No. 1:24-cv-00484-SMD-JMR

UNITED HEALTHCARE SERVICES, INC.,

Defendant.

**MEMORANDUM OPINION AND ORDER**

**THIS MATTER** is before the Court on Defendant's motion for interlocutory appeal, Doc. 51 ("Def.'s Mot. for Interlocutory App."). The Court previously denied Defendant's motion to dismiss, Doc. 44 (the "Order"), and held that *American Pipe* tolls Plaintiff's class action claims under the New Mexico Minimum Wage Act ("NMMWA"), N.M. Stat. Ann. §§ 37-1-5 and 50-4-22. Defendant now challenges the Order under 28 U.S.C. § 1292(b), seeking an interlocutory appeal to the Tenth Circuit. Def.'s Mot. for Interlocutory App. at 1. The central question Defendant seeks to certify is "[w]hether one class action tolls other class actions under *American Pipe*" in light of *China Agritech v. Resh*, 584 U.S. 732 (2018). *Id.* at 4. Plaintiff responded, Doc. 66 ("Pl.'s Resp."), opposing Defendant's motion and Defendant replied, Doc. 67 ("Def.'s Reply"). For the reasons discussed below, and after reviewing the relevant law and filings, Defendant's motion is **DENIED**.

**BACKGROUND**

The Court incorporates its previous summary of the relevant facts and procedural background. *See* Order at 3–8. The following is a brief overview of the facts.

## I. *Fedor* Litigation

The procedural history of this matter is intertwined with that of *Fedor v. United HealthCare, Inc., et al.*, No. 17-cv-13-MV-SCY (D.N.M) ("*Fedor*").

On January 7, 2017, Dana Fedor filed a collective and class action complaint against United HealthCare, Inc., alleging FLSA and NMMWA violations, on behalf of herself and all others similarly situated. *Fedor*, Dkt. No. 1. Fedor alleged, on behalf of herself and all other "Care Coordinators," that United HealthCare, Inc. and United Health Services (collectively "*Fedor* defendants") had violated the FLSA and NMMWA primarily by not paying "Care Coordinators" overtime for working in excess of 40 hours per week. *Fedor*, Dkt. No. 3 ¶ 6.

The *Fedor* defendants moved to dismiss the amended complaint. *Fedor*, Dkt. No. 16. Nearly 22 months after filing, the district court granted the Fedor defendants' motion to dismiss. *Fedor v. United Healthcare, Inc.*, No. 17-cv-13, 2019 WL 1242236 (D.N.M. Mar. 18, 2019). Over a year later, the Tenth Circuit vacated that decision and remanded to the district court. *Fedor v. United Healthcare, Inc.*, 976 F.3d 1100 (10th Cir. 2020).

On May 7, 2021, the district court denied the *Fedor* defendants' motion to dismiss in nearly all respects, except as to one opt-in plaintiff. *Fedor v. United Healthcare, Inc.*, No. 17-cv-13, 2021 WL 1840449 (D.N.M. May 7, 2021). The *Fedor* defendants appealed. *Fedor*, Dkt. No. 74. On April 11, 2022, the Tenth Circuit affirmed the district court's order and remanded. *Fedor v. United Healthcare, Inc.*, No. 21-2051, 2022 WL 1073444 (10th Cir. Apr. 11, 2022).

The *Fedor* plaintiffs and defendants reached a settlement covering the defined class of "care coordinators," but specifically excluded individuals with the job title of "Case Manager RN," *Fedor*, 2025 WL 1124529, at *3–4, the class asserted by Plaintiff Blanton in this case.

The details of the settlement and its exclusion of "Case Manager RN" were not publicly accessible until the *Fedor* plaintiffs moved for sanctions on February 28, 2024. *Fedor*, Dkt. No. 104. The district court found that "Defendants' failure to identify class members, disclose information about class members, and respond to Plaintiffs' concerns about those failures" was sanctionable. *Fedor*, 2025 WL 1124529, at *5.

## II. *Blanton* Litigation

Meanwhile, on May 17, 2024, Plaintiff Jessica Blanton filed a complaint against Defendant United Healthcare Services, Inc. ("Defendant" or "UHS"), alleging violations of the Fair Labor Standards Act, 29 U.S.C. §§ 201, et seq. ("FLSA"), and the New Mexico Minimum Wage Act, N.M. Stat. Ann. § 50-4-19, et seq. ("NMMWA"). Doc. 1 ("Pl.'s Compl."). Blanton alleges that she worked for UHS as a "Case Manager RN" from approximately November 2013 to September 2018. *Id.* ¶¶ 13–14.

Blanton alleges both individual and class action NMMWA claims. *Id.* ¶¶ 1, 24–27, 34, 36, 40–41, 61–75, 83–93. Blanton brings the NMMWA class claims under Rule 23 of the Federal Rules of Civil Procedure. *Id.* ¶¶ 1, 41, 58, 61–62. Blanton defines the asserted class as "[a]ll individuals employed by Defendant as Case Manager RNs in New Mexico who were paid on a salary basis and classified as exempt from overtime from June 19, 2009 to the present." *Id.* ¶ 62.

Defendant filed a motion to dismiss Plaintiff's complaint, and in the alternative, to strike Plaintiff's NMMWA class action claims, Doc. 19. The Court denied Defendant's motion to dismiss, holding that New Mexico courts would apply *American Pipe* tolling to Plaintiff's individual and class action NMMWA claims. Order at 29.

Defendant moves to certify an interlocutory appeal to clarify whether the federal *American Pipe* doctrine categorically bars successive class actions filed by putative members of a prior class action.

**LEGAL STANDARD**

District courts have "first line discretion to allow interlocutory appeals," *Swint v. Chambers Cnty., Comm'n*, 514 U.S. 35, 47 (1995). To warrant interlocutory appeal under § 1292(b), all three of the following factors must be met: (1) the issue must involve a controlling question of law; (2) as to which there is substantial ground for difference of opinion; and (3) answering that question would materially advance the ultimate termination of the litigation. 28 U.S.C. § 1292(b). The moving party bears the burden of establishing each element. *White v. Nix*, 43 F.3d 374, 376 (8th Cir. 1994).

Although § 1292(b) provides a path to appellate review before the final disposition of a case, it is employed "sparingly." *Camacho v. Puerto Rico Ports Auth.*, 369 F.3d 570, 573 (1st Cir. 2004). Interlocutory appeals "tend to disrupt and delay the underlying proceedings," *Carpenter v. Boeing Co.*, 456 F.3d 1183, 1189 (10th Cir. 2006), and can have a "debilitating effect on judicial administration," *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 170 (1974). These concerns are no less pressing in § 1292(b) appeals. *See Koehler v. Bank of Bermuda, Ltd.*, 101 F.3d 863, 865 (2d Cir. 1996); *Utah ex rel. Utah State Dep't of Health v. Kennecott Corp.*, 14 F.3d 1489, 1495 (10th Cir. 1994). Courts permit § 1292(b) appeals in those "extraordinary cases" where "extended and expensive proceedings probably can be avoided by immediate final decision of controlling questions encountered early in the action." *Id.* (quoting S. Rep. 2434, 85th Cong., 2d Sess. 1 (1958)); *see also Koehler*, 101 F.3d at 865 (explaining that § 1292(b) was intended as a "rare exception to the final judgment rule that generally prohibits piecemeal appeals").

Upon careful consideration of the parties' arguments, the Court finds that interlocutory appeal is not appropriate in this case. Although Defendant satisfies the third factor, it fails to meet the first and second. First, Defendant mischaracterizes the challenged Order by seeking to certify a question that the Court did not address. Second, Defendant fails to demonstrate that a "substantial ground for difference of opinion" exists. The Court therefore denies Defendant's request for interlocutory appeal.

**I. Defendant Fails to Satisfy the First Factor by Mischaracterizing the Court's Ruling.**

To satisfy the first factor for interlocutory appeal, the question to be certified must be controlling, and be a question of law. 8 U.S.C. § 1292(b).

"Question of law" refers to a "question of the meaning of a statutory or constitutional provision, regulation, or common law doctrine," as opposed to a particular application of law to facts. *Ahrenholz v. Bd. of Trs. of Univ. of Ill.*, 219 F.3d 674, 676 (7th Cir. 2000). Consequently, it excludes any question that requires a Court of Appeals to "delve beyond the surface of the record in order to determine the facts." *XTO Energy, Inc. v. ATD, LLC*, 189 F. Supp. 3d 1174, 1204 (D.N.M. 2016) (citing *McFarlin v. Conseco Servs., LLC*, 381 F.3d 1251, 1259 (11th Cir. 2004)). The question must be stated at "a high enough level of abstraction to lift the question out of the details of the evidence or facts of a particular case and give it general relevance to other cases in the same area of law." *Id.* In other words, "courts should certify questions when they are unsure of what the law is, not when there is merely a dispute as to how the law applies to the facts of a particular situation." *Thymes v. Verizon Wireless, Inc.*, No. CV 16-66 KG/WPL, 2017 WL 3397383, at *2 (D.N.M. Mar. 16, 2017) (citing *Certain Underwriters at Lloyd's, London v. Nance*, No. CIV-04-937 JB/WDS, 2006 WL 4109675, at *3 (D.N.M. Aug. 24, 2006)).

A question of law is "controlling" if its resolution has the potential for substantially speeding up the disposition of the litigation. *Slusser v. Mountain W. Conf.*, No. 1:24-CV-03155-

SKC-MDB, 2025 WL 1265874, at *2 (D. Colo. May 1, 2025). A "legal issue need not be dispositive to be controlling, but it must at least materially affect the outcome of the case." *XTO Energy*, 189 F. Supp. 3d at 1193–94 (citing *In re City of Memphis*, 293 F.3d 345, 351 (6th Cir. 2002)).

Throughout its motion, Defendant frames the question to be certified in a few different ways, but the principal issue is: Whether *American Pipe* tolling applies to successive class claims in light of *China Agritech*. Def.'s Mot. for Interlocutory App. at 2, 4. Defendant argues that this qualifies as a question of law because it asks the Court of Appeals to interpret *American Pipe* tolling doctrine in abstract and does not depend on the specific facts of this case. *Id.* at 4.

Plaintiff argues that Defendant mischaracterizes the Court's ruling. Plaintiff contends that an interlocutory appeal under § 1292(b) is only appropriate if the question presented for certification is addressed by the challenged order and accurately reflects the court's ruling. Pl.'s Resp. at 2. Plaintiff points out that the Court's ruling is specific to the facts in this case; the Court applied equitable tolling to her NMMWA class claims because Plaintiff demonstrated both diligence and extraordinary circumstances. *Id.* at 3.

The Court will first address whether Defendant's proposed question accurately summarizes the challenged ruling, and whether a certified question must match the issue actually addressed in the challenged order.

a. <u>The Court's Ruling is Fact-Specific and Intertwined with the Factual Record.</u>

In its Order, the Court made three key holdings. First, it held that Plaintiff belongs to the class asserted in *Fedor*[1] for *American Pipe* purposes. Order at 24. Second, the Court determined that New Mexico courts would apply *American Pipe* tolling as the governing framework to a

[1] *See Fedor*, 2025 WL 1124529, at *5.

plaintiff bringing subsequent, similar claims to *Fedor* NMMWA class claims. *Id.* at 25. Third, the Court held that under the unique circumstances of this case, *American Pipe* tolls both Plaintiff's individual and class action claims. The Court distinguished *China Agritech* and the Tenth Circuit's dicta in *Frank v. Crawley Petroleum Corp.*, 992 F.3d 987, 1000 n.3 (10th Cir. 2021) based on an array of factors unique to this case. Order at 26–27. Defendant requests an interlocutory appeal to challenge this third holding.

The Court tolled Plaintiff's class action claims based on the following unique factors: (1) the *Fedor* court did not deny class certification; (2) Plaintiff's asserted class was excised from the *Fedor* settlement agreement without any chance to obtain relief, and this exclusion remained non-public until the *Fedor* plaintiffs filed their motion for sanctions, Order at 5, 17; (3) the complex, litigious, and protracted nature of the *Fedor* proceedings made it difficult for any putative class members to know whether a settlement had been reached and, if so, whether they were included; and (4) the *Fedor* defendants removed certain employees' data and worsened that confusion, an action for which they were ultimately sanctioned. *Id.* at 6.

The Court further explained its third finding by invoking New Mexico's equitable tolling doctrine, which requires a plaintiff to demonstrate both diligence in pursuing their rights and extraordinary circumstances that stood in their way. *Id.* at 28.

In short, the Court tolled Plaintiff's NMMWA class action claims because it anticipated that New Mexico courts would apply *American Pipe* under the unique circumstances of this case, and because such tolling accords with New Mexico's equitable tolling principles.

Defendant mischaracterizes the Court's holding by seeking to certify the question of "[w]hether one class action tolls other class actions under *American Pipe*." Def.'s Mot. for Interlocutory App. at 4. Admittedly, Defendant's argument has been consistent: They maintain

that "*China Agritech* precludes *American Pipe* tolling in successive class actions, regardless of the circumstances." Def.'s Reply at 3. In other words, Defendant argues that under *China Agritech*, no set of unique circumstances, even sanctionable behavior, can justify tolling a successive class action. It argues that *China Agritech* operates as an absolute bar to tolling any successive class action claims by a putative class member of an earlier class action. This absolute prohibition, however, is not among the issues the Court addressed in its Order.

Defendant also suggests that the Court distinguished *China Agritech* solely because the *Fedor* court never ruled on class certification, as opposed to class certification being denied or voluntarily dismissed in the prior class action. *See* Def.'s Mot. for Interlocutory App. at 4 (characterizing the Court's ruling as "Whether *China Agritech* precludes application of American Pipe tolling to otherwise untimely class claims, even without a ruling on class certification in the original action"). That characterization ignores the bulk of the Court's holding. While the Court considered the status of class certification in *Fedor* as a factor, it also relied on other extraordinary circumstances to distinguish *China Agritech*. Reducing the Court's analysis to the disposition of class certification in the earlier class action alone misreads the basis and scope of the Order.

b. <u>Defendant Cannot Appropriately Certify a Question Not Addressed by the Court.</u>

The Court then considers whether Defendant can certify a question different from the one addressed in the challenged order. The test for determining if an issue is appropriate for interlocutory review is "(1) whether that issue was raised in the certified order; and (2) whether the issue can control the disposition of the order." *Paper, Allied-Indus., Chem & Energy Workers Int'l Union v. Cont'l Carbon Co.*, 428 F.3d 1285, 1291 (10th Cir. 2005).

The first prong is not met. The question that Defendant seeks to certify, whether *China Agritech* precludes all tolling of subsequent class claims filed by putative class members of a prior

class action, was not specifically raised or addressed in the challenged Order. Instead, the Court narrowly concluded that *China Agritech* and the Tenth Circuit's dicta in *Crawley* do not apply to this case because of unique circumstances, such as the *Fedor* defendants' sanctionable behavior and the fact that Plaintiff's asserted class never had an opportunity to seek relief. *See* Order at 26–27.

Turning to the second prong, even if the Tenth Circuit addresses the exact question that Defendant raises, the answer will not necessarily control the disposition of the challenged Order. To dispose of Plaintiff's NMMWA class claim, the Tenth Circuit must find that *China Agritech* bars successive class claims categorically or that the specific circumstances of this case do not alter that outcome. Making that determination would require a review of the factual records in both this case and *Fedor* to ascertain whether the unique factors identified in the Order sufficiently distinguish *China Agritech*. Specifically, the Tenth Circuit would have to evaluate whether these asserted unique factors, the nonpublic excision of Plaintiff's class from the *Fedor* settlement agreement and the *Fedor* defendants' improper removal of employee data, have any impact on the tolling analysis.

Furthermore, determining that *China Agritech* bars successive class claims without exception requires the Court of Appeals to find either that this rule does not conflict with New Mexico's equitable tolling framework, or that any conflict is irrelevant. Making that determination also requires examining the records here and in *Fedor* to conclude that even if Plaintiff acted diligently under extraordinary circumstances, those facts do not affect the analysis.

Evaluating whether the extraordinary circumstances here and in *Fedor* affect the application of *American Pipe* tolling requires applying law to specific facts, which is precisely the kind of inquiry that defeats interlocutory certification under § 1292(b). *See Ahrenholz*, 219 F.3d

at 676–77 (holding that a question of law as used in § 1292(b) refers to a "pure" question of law rather than merely to an issue that might be free from a factual contest). Indeed, the Court explicitly held that "New Mexico courts would find that *American Pipe* tolling would apply to NMMWA claims, specifically to Plaintiff's class claims, notwithstanding *China Agritech, Inc. v. Resh*, 584 U.S. 732 (2018)" and emphasized that "its holding and attendant analysis is confined to this case." Order at 24, 29.

Although "it is the district court's *order* that is certified under § 1292(b) and not the specific question of law deemed controlling by the district court" or the specific question framed by the appellant, *Homeland Stores, Inc. v. Resol. Tr. Corp.*, 17 F.3d 1269, 1272 (10th Cir. 1994), this Court's Order never addressed the broad question of whether *China Agritech* bars successive class actions without exception. Although an interlocutory appeal requires framing a question of law more abstractly than it appears in the challenged order, Defendant proposes a brand-new question that, if answered affirmatively, will help it pare down Plaintiff's NMMWA class action claims. Defendant cannot use an interlocutory appeal under § 1292(b) to circumvent the Court's ruling and revive arguments the Court deemed unnecessary to decide the pending motions. *See Cont'l Carbon Co.*, 428 F.3d at 1291.

Although the Court can deny the motion on this factor alone, it will proceed with its analysis. The Court of Appeals may "consider any question reasonably bound up with the certified order, whether it is antecedent to, broader or narrower than, or different from the question specified by the district court." *New Mexico v. Gen. Elec. Co.*, 335 F. Supp. 2d 1157, 1182 (D.N.M. 2003) (quoting *United Transp. Union Loc. 1745 v. City of Albuquerque*, 178 F.3d 1109, 1122 (10th Cir.1999) (Briscoe, J., concurring and dissenting)). If the Court of Appeals holds that *China Agritech* bars successive class actions categorically, regardless of New Mexico's equitable tolling

doctrines or the underlying factual record, then the interlocutory appeal will likely resolve a portion of this Court's Order. Therefore, the Court proceeds to analyze the two remaining factors.

## II. No Substantial Ground for Difference of Opinion Exists Without Comparable Extraordinary Circumstances or Traditional Equitable Tolling Analysis.

A substantial ground for difference of opinion may arise in four distinct scenarios: (1) the trial court ruled in a manner contrary to all courts of appeals which have reached the issue; (2) the circuits are in dispute on the question and the court of appeals of the circuit has not spoken on the point; (3) the case presents a complicated issue of foreign law; or (4) novel and difficult questions of first impression are presented. *Couch v. Telescope, Inc.*, 611 F.3d 629, 633 (9th Cir. 2010) (citing 2 Fed. Proc., L. Ed. § 3:212 (2010)); *see also XTO Energy*, 189 F. Supp. 3d at 1194.

Defendant argues that a substantial ground for difference of opinion exists because the Court's ruling is contrary to the rulings of every federal appellate court to consider the following issue: "Whether *China Agritech* precludes application of *American Pipe* tolling to otherwise untimely class claims, even without a ruling on class certification in the original action." *See* Def.'s Mot. for Interlocutory App. at 6. To support its argument, Defendant cites *Blake v. JP Morgan Chase Bank NA*, 927 F.3d 701, 709 (3d Cir. 2019); *In re Celexa & Lexapro Mktg. & Sales Prac. Litig.*, 915 F.3d 1, 16–17 (1st Cir. 2019); and *Porter v. S. Nev. Adult Mental Health Servs.*, 788 F. App'x 525, 526 (9th Cir. 2019).

As explained in the preceding section, reducing the Court's basis for distinguishing *China Agritech* to a mere "ruling on class certification in the original action" mischaracterizes the Court's reasoning. Framing the issue this way also deviates from Defendant's own prior articulation: In light of *China Agritech*, "[w]hether one class action tolls other class actions under *American Pipe*." Def.'s Mot. for Interlocutory App. at 4. Defendant cannot shift the phrasing of the question across different sections of its motion to fit whichever argument they are making at the time.

Accordingly, the Court will address this factor using the question as Defendant originally framed it.

As explained above, the Court tolled Plaintiff's NMMWA class action claims because it anticipated that New Mexico courts would apply *American Pipe* under the unique circumstances of this case, a result that accords with the state's equitable tolling principles. In this regard, none of Defendant's cited cases demonstrate a substantial ground for difference of opinion. None of those decisions address the extraordinary circumstances that led to this Court's ruling, nor do they analyze the interplay between *American Pipe* and a state equitable tolling framework comparable to New Mexico's. Defendant emphasizes that it merely seeks to certify whether a successive class action may be tolled under the federal doctrine of *American Pipe*. Def.'s Reply at 4–5. Without addressing the extraordinary circumstances and the independent effect of state equitable tolling principles, however, answering that question in the affirmative or negative will not eliminate Plaintiff's class claims.

Even under Defendant's broad question, which implies that no successive class action may survive following *China Agritech*, the circuit courts remain divided on the issue, contrary to Defendant's claim that all other circuits have rejected this Court's position.

In *Blake*, the Third Circuit case that Defendant cites, the plaintiffs were putative class members in an earlier class action and sought to bring identical claims in a successive class action. *Blake*, 927 F.3d at 703–05. To distinguish their case from *China Agritech*, the *Blake* plaintiffs argued that the previous class action was still pending on appeal when they filed the new class action, whereas the original action in *China Agritech* had completely concluded. *Id.* at 709. The Third Circuit rejected this distinction and held that *China Agritech* is clear and unequivocal: "[C]ourts may not toll new class actions under *American Pipe*, period." *Id.* at 709–10.

Although *Blake* resolutely held that *China Agritech* bars the tolling of all successive class actions under *American Pipe*, a later Third Circuit case, *Williams v. Tech Mahindra (Am.) Inc.*, clarified that position. *See* 70 F.4th 646, 650 (3d Cir. 2023). *Williams* cautions against overextending *China Agritech*, noting that it is a "clarification of *American Pipe*'s reach," rather than a "broad holding announcing a limit on other traditional forms of equitable tolling." *Id.* (citing *China Agritech*, 584 U.S. at 746–47). In other words, *Williams* confirms *Blake*'s holding that successive class actions cannot rely on *American Pipe* tolling but clarifies that they may still proceed under traditional forms of equitable tolling.

*Williams* further explained that "the reasons for not extending *American Pipe* tolling to class claims do not negate the application of traditional forms of equitable tolling in that context." *Id.* at 651. The court reasoned that allowing traditional equitable tolling in the class action context "does not undermine the force of *China Agritech*'s limitation on *American Pipe* . . . . because to benefit from one of the traditional forms of equitable tolling, a plaintiff must make individualized showings that he pursued his claim with diligence and that extraordinary circumstances beyond his control prevented a timely and proper assertion of his rights." *Id.* Consequently, the Third Circuit held that the district court erred by dismissing the plaintiff's successive class action claim under *China Agritech* alone, without considering traditional equitable tolling principles. *Id.*

The Sixth Circuit squarely addressed "whether a successive class action could claim the benefit of *American Pipe* tolling" in *In re Vertrue Inc. Mktg. & Sales Pracs. Litig.* and answered in the affirmative, much like this Court. 719 F.3d 474, 479–80 (6th Cir. 2013). The court held that "if the prior district court had denied class certification on the merits, a subsequent class action could not invoke *American Pipe* tolling. But if there had been no merits adjudication of class status, there was no harm in allowing *American Pipe* to apply to a successive class action." *Id.* In

*Potter v. Comm'r of Soc. Sec.*, however, the Sixth Circuit observed in a footnote that "we note that *Vertrue*'s holding may not have survived the Supreme Court's later decision in *China Agritech, Inc. v. Resh*." 9 F.4th 369, 376 n.4 (6th Cir. 2021). Because *Potter* concerned the duration of *American Pipe* tolling rather than its applicability, the court did not further address how *China Agritech* affects its prior holding that a subsequent action may invoke *American Pipe* tolling.

Defendant then cites the Ninth Circuit decision in *Porter*, which held that *American Pipe* tolling did not apply to the plaintiff's ADA and § 1983 class action claims in light of *China Agritech*. 788 F. App'x at 526. In cases involving state statutes, the Ninth Circuit and California state courts likewise held that *American Pipe* tolling does not apply to successive class claims following *China Agritech*. *See Anderson v. Michaels Stores Inc.*, 655 F. App'x 573, 574 (9th Cir. 2016); *Fierro v. Landry's Rest. Inc.*, 244 Cal. Rptr. 3d 1, 11 (Cal. Ct. App. 2019).

Similarly, the First Circuit in *In re Celexa* rejected the plaintiff's attempt to distinguish *China Agritech*, holding that "the tolling effect of a motion to certify a class applies only to individual claims, no matter how the motion is ultimately resolved." 915 F.3d at 16–17.

In *Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987), the Second Circuit held that *American Pipe* tolling does not apply to successive class action following the denial of class certification in the original class action. However, the court left "for another day the question of whether the filing of a potentially proper subclass would be entitled to tolling under *American Pipe*." *Id.* Because the Second Circuit has not revisited this question, it leaves the door open to applying *American Pipe* tolling to a successive class action.

In summary, the Sixth Circuit held in *Vertrue* that *American Pipe* tolling applies to successive class claims, though *Potter*'s dictum suggests that this may no longer be true following *China Agritech*. The Second Circuit left this an open question in *Korwek* and has not revisited it

since *China Agritech*. While the Third Circuit held that *American Pipe* tolling itself does not apply to successive class actions, it emphasized that *China Agritech* is a narrow decision that should not be given broader effect. The Third Circuit then found that traditional equitable tolling principles can serve as independent grounds to allow successive class actions. The First and Ninth Circuits apply strict bars to successive class actions, which closely align with Defendant's position.

Admittedly, the circuit courts are split on whether subsequent class actions can be tolled post-*China Agritech*. The Court ultimately finds this factor not met because no other circuit courts have confronted extraordinary circumstances similar to those in this case and *Fedor*, nor has any other circuit thoroughly addressed the tolling of successive class claims under state-law equitable principles following *China Agritech*. Although certifying a novel legal question to the Court of Appeals might clarify this area of law, the Court finds that the balance of factors weighs against certification, and this case is not the appropriate vehicle to present that question.

**III. A Successful Immediate Appeal Will Advance the Ultimate Termination of This Litigation to Some Extent.**

An immediate appeal advances the termination of a litigation if it "would (1) eliminate the need for trial, (2) eliminate complex issues so as to simplify the trial, or (3) eliminate issues to make discovery easier and less costly." *Dorato v. Smith*, 163 F. Supp. 3d 837, 894–95 (D.N.M. 2015) (citing *Coates v. Brazoria Cnty.*, 919 F. Supp. 2d 863, 867 (S.D. Tex. 2013).

Defendant argues that a successful interlocutory appeal here will eliminate Plaintiff's NMMWA class claim, which will (1) make discovery easier and less costly, (2) obviate the need for class certification motion practice, and (3) remove the possibility of trial on a class basis. Def.'s Mot. for Interlocutory App. at 6. Defendant argues that certifying the interlocutory appeal will expedite rather than delay this litigation by transforming a potential class action into a single-plaintiff action. *Id.*

Plaintiff responds that Defendant's supporting authority is inapposite and argues that this lawsuit will not turn into a single-plaintiff action even if the class claims are eliminated. Specifically, Plaintiff's counsel asserts that approximately 25 individuals have already expressed a willingness to join the case on an individual basis if it does not proceed as a class action. Consequently, even a successful interlocutory appeal would fail to effectively pare down the number of parties. Pl.'s Resp. at 10.

The litigation will likely proceed "in substantially the same manner regardless of the court's decision." *XTO Energy*, 189 F. Supp. 3d at 1195. This interlocutory appeal will not avoid "expensive and protracted proceedings" unless the Tenth Circuit resolves a multifaceted question requiring both an analysis of state equitable tolling principles and potentially a review of the factual record. The Court acknowledges that the Order held that the application of *American Pipe* to the successive class action "comports with New Mexico's equitable tolling doctrine," rather than using traditional equitable tolling doctrines as an independent basis. *See* Order at 28. Nevertheless, the Court reviewed the New Mexico equitable tolling factors in detail and made specific findings that each requirement was met. *Id.* at 28–30. New Mexico's equitable tolling doctrine requires a plaintiff to prove (1) that they have been pursuing their rights diligently, and (2) that some extraordinary circumstance stood in their way. *Id.* at 28 (citing *Little v. Baigas*, 390 P.3d 201, 207 (N.M. Ct. App. 2016)). Based on the factual records of *Fedor* and this case, the Court specifically found that Plaintiff demonstrated both diligence and "an extraordinary event beyond [] her control." *Id.* The Court then enumerated the extraordinary circumstances justifying tolling to prevent injustice, including the inevitable court delay in *Fedor*, the *Fedor* Defendants' sanctionable behavior and dilatory tactics, and Plaintiff's responsive filing following the *Fedor* settlement. *Id.* at 28–29.

As a result, even if the Tenth Circuit answers Defendant's question in the affirmative, that *China Agritech* precludes successive class actions without exception, Plaintiff's NMMWA class claims would not necessarily be eliminated. Unless the Tenth Circuit also finds that New Mexico's equitable tolling principles cannot serve as an independent ground for tolling the successive class action, Plaintiff's class claim will remain.

That said, if the Tenth Circuit holds that New Mexico's traditional tolling principles do not alter the analysis, Plaintiff's NMMWA class action claim will be eliminated. Still, because Plaintiff's individual claims would remain, eliminating the class action claim would neither avoid a trial nor simplify the core legal issues. While dismissal of a class claim would admittedly reduce the scope and cost of discovery to some extent, courts are divided on what qualifies as materially advancing the ultimate termination of the litigation. *See Trevino v. RDL Energy Servs., LP*, No. 4:14-CV-01936, 2017 WL 10153536, at *2 (S.D. Tex. Dec. 19, 2017) (holding that reducing 13 plaintiffs to two plaintiffs is not sufficient to support certification of an interlocutory); *but see Reese v. BP Expl. (Ala.) Inc.*, 643 F.3d 681, 688 (9th Cir. 2011) (holding that the potential that a reversal could remove a defendant and several claims from the case satisfied the material advancement element).

Plaintiff's counsel avers that approximately 25 individuals will join the lawsuit on an individual basis, meaning that discovery will not be simplified even if Defendant's interlocutory appeal is successful. Defendant counters that the addition of these individuals is purely speculative and cannot serve as a basis to defeat certification. Ultimately, it remains unclear how many individuals will join the action, or if any will at all, and whether a successful interlocutory appeal will actually lead to simpler, less costly discovery. Yet, despite these uncertainties, eliminating

the class claim will likely streamline case management and discovery to some degree, even if the precise scope of that benefit remains unclear.

The Court nevertheless declines to certify an interlocutory appeal for such an uncertain benefit. Courts have discretion to deny certification of an appeal even if the parties satisfy the statutory criteria of § 1292(b). *Bachowski v. Usery*, 545 F.2d 363, 368 (3d Cir. 1976). Furthermore, as already detailed, Defendant has not established the first two interlocutory appeal factors.

While the Court of Appeals has unfettered discretion to review the entire challenged order and is not restricted to the specific question certified, *Gen. Elec. Co.*, 335 F. Supp. 2d at 1182, the specific question Defendant seeks to certify is one this Court did not attempt to address in the underlying Order. Answering a question that broad was unnecessary to determine whether Plaintiff's state class claim could proceed.

Conversely, certifying the question that the Court actually addressed would require reviewing the factual record, which disqualifies it as a pure question of law. Moreover, this is not a question that will evade appellate review absent an interlocutory appeal. Defendant remains entirely free to appeal the Court's decisions once a final judgment is entered. Weighing all these factors, the Court finds that pausing the litigation to await the outcome of an interlocutory appeal would have limited benefits and further delay an already protracted lawsuit.

## CONCLUSION

**IT IS THEREFORE ORDERED** that Defendant's request that the Court amend its Order to certify it for interlocutory appeal pursuant to § 1292(b), Doc. 51, is **DENIED**.

**SARAH M. DAVENPORT**
**UNITED STATES DISTRICT JUDGE**